**Louie ARNETT, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 3319.

Court of Civil Appeals of Texas.

Eastland.

June 28, 1957.

Rehearing Denied July 26, 1957.

Joe Burkett, San Antonio, for appellant.

W. Pat Camp, San Antonio, and John R. Grace, Gen. Counsel, Texas State Bar, Austin, for appellee.

LONG, Justice.

This suit was instituted by the State of Texas on behalf of the Grievance Committee of District 20 of the State Bar of Texas against Louie Arnett, a practicing attorney of San Antonio, Texas. The defendant was charged with numerous instances of fraudulent and dishonorable conduct relating to the making of false title opinions, false land appraisals and other acts, with the intention of defrauding and betraying the Board of Insurance Commissioners of Texas and the public at large in connection with the organization, qualification and operation of the Pioneer Western Mutual Insurance Company. A trial was had before the court with the aid of a jury. In answer to special issues the jury found (1) that on or about April 20, 1953, the defendant presented to Paul D. Conner, legal examiner for the Board of Insurance Commissioners, the title opinion on his own property (described in Exhibit 2) knowing that said property was encumbered with a lien thereon; (2) that the defendant represented to Ruben R. Lozano that the property (described in Exhibit 3) was clear of liens; (3) that the defendant made such representation knowing that said property was not clear of liens; (4) that the defendant presented to Paul D. Conner, legal examiner for the Board of Insurance Commissioners, the title opinion of Ruben R. Lozano knowing that said property described in said opinion was not clear of liens; (5) that the defendant signed the title opinion (described in Exhibit 4) knowing that A. B.

Brickey did not own the property described therein; (6) that the defendant signed the title opinion (described in Exhibit 4) with the intent of inducing Paul D. Conner, legal examiner for the Board of Insurance Commissioners, to accept same as true; (7) that the defendant signed the title opinion (described in Exhibit 5) knowing that A. B. Brickey did not own the property described in said title opinion; (8) that the defendant signed the title opinion (described in Exhibit 5) with the intent of inducing Paul D. Conner, legal examiner for the Board of Insurance Commissioners, to accept same as true; (9) that the property described in Exhibit 7 did not have a reasonable market value of $70,000; (10) that at the time the defendant signed the appraisal as set forth in Exhibit 7, he knew that the property described in said appraisal did not have a reasonable market value of $70,000; (11) that the reasonable market value on September 3, 1953, of the property described in Exhibit 7 was $13,000; (12) that at the time the defendant signed the appraisal, as set forth in Exhibit 7, he did so with the intent of inducing the Board of Insurance Commissioners to accept the appraisal as the reasonable market value of said property; (13) that at the time the defendant signed the title opinion described in Exhibit 8, he did so with the intention of concealing from the Board of Insurance Commissioners the existence of the liens thereon in favor of the Frost National Bank; (14) that at the time the defendant signed the title opinion described in Exhibit 9, he did so with the intention of misleading the Board of Insurance Commissioners into believing that said property described therein was free of liens. Based upon the findings of the jury the court entered judgment in favor of the. plaintiff and disbarred defendant from practicing law. Defendant has appealed. Defendant makes no attack upon the sufficiency of the evidence to support the findings of the jury.

By his first point defendant asserts the court erred in overruling his plea in abatement based upon the failure of the county attorney, the district attorney or the attorney general of Texas to join as a representative of the plaintiff. We find no merit in this point. In 1939 the Legislature enacted the State Bar Act, Article 320a–1, V.A.C.S., which had for its purpose the regulation of the practice of law. The act created the organization known as the State Bar of Texas composed of the registered, licensed attorneys of the State and constituted it an administrative agency of the judicial department. The act empowered the Supreme Court with the approval of a majority of registered, licensed lawyers of the State to prescribe rules and regulations for disciplining, suspending and disbarring attorneys at law. The primary purpose of the legislature in the enactment of the statute was to protect the public by eliminating from the legal profession those morally unfit to enjoy its privileges. The Supreme Court of Texas thereafter promulgated rules governing the State Bar. These rules may be found in the pocket part of 1 Vernon's Annotated Civil Statutes. The rules governing filing of disbarment suits against attorneys begin with Section 1 of Article 12. These rules place the handling of complaints against attorneys both before the Grievance Committee and in the court in the hands of the Grievance Committee of the district in which the attorney resides. Section 23 of the rules provides that the committee may appoint counsel for the prosecution of disbarment actions. It is also therein provided that the committee shall have the option to call upon the district attorney to represent it in the case. Section 24 provides that the proceeding for disbarment shall be filed in the name of the State of Texas, but it is clear that the proceeding is to be brought and controlled by the Grievance Committee of the State Bar. We hold that the proceeding is not actually one in behalf of the public generally. Section 29 provides that the State Bar must pay any cost adjudged against the plaintiff. In Hexter Title and Abstract Company v. Grievance Com-

mittee, 142 Tex. 506, 179 S.W.2d 946, 949, 157 A.L.R. 268, in an opinion by Judge Alexander, our Supreme Court held that all of the rules and regulations of the State Bar which were promulgated by the Supreme Court are valid and that the Supreme Court had authority to promulgate such rules under the provisions of Article 320a, V.A.C.S. The court in that case said in part:

"It is true this suit was not brought in the name of the State Bar. It was brought in the name of a Grievance Committee of the State Bar, but in this there was no error. Section 4 of the State Bar Act authorized the Supreme Court to prepare and propose rules for the conduct of the State Bar, and further provided that when the rules were approved by a vote of the registered lawyers of the State, they should be adopted and promulgated by the court and become effective for that purpose. In compliance with the provisions of the act the Supreme Court did adopt and promulgate rules for the conduct of the State Bar. Section 16 of these rules provides for the creation of Grievance Committees. * * * It will be seen that the act conferred upon the Supreme Court the authority to prescribe rules for the conduct of the State Bar, and the court in compliance therewith adopted a rule which authorized the State Bar to maintain suits to prohibit the unlawful practice of law in the name of the Grievance Committee. It was not a matter of substantive law, but purely one of procedure, as to who should be permitted to maintain such a suit. The act was broad enough to authorize the Supreme Court to prescribe the procedure to be followed in such matters. Undoubtedly the Supreme Court could prescribe through whom and in what name the State Bar should sue."

 It was held in Brown v. Linkenhoger, Tex.Civ.App., 153 S.W.2d 342 (Writ Ref.), that the power of the Supreme Court to make rules, when exercised, is the exercise of legislative power under direct grant of the constitution and such rules when promulgated and established have all the effect of statutes. From a reading of the act creating the State Bar and the rules promulgated by the Supreme Court we are led to the conclusion that the authority to institute and maintain a suit for disbarment of an attorney is vested specifically in the Grievance Committee of the district in which such attorney resides. The Grievance Committee may in its discretion call upon the district attorney of the county; where the suit is filed, but its failure to do so is not ground for the abatement of a suit instituted by the committee with counsel of its own selection. Defendant makes the contention this is a quo warranto proceeding and is governed by the law regulating such proceeding. We do not agree with this contention. It is not a quo warranto proceeding, but is a proceeding under the law establishing the State Bar of Texas and the rules promulgated by the Supreme Court authorized thereby.

 By his second point defendant contends the trial court erred in overruling his plea in abatement on the ground that the plaintiff had made a valid and binding agreement with the defendant with reference to his testimony for the State in the case of the State of Texas v. W. C. Brickey, Jr. It is shown that the State granted the defendant immunity for testifying for the State in a criminal prosecution growing out of some of the transactions involved in this case. The defendant testified for the State in said criminal case. It is the defendant's position that the State having used the defendant as a witness in the criminal case that it is thereby estopped from maintaining this disbarment proceeding against him. We do not agree with this contention and this point is overruled. The district attorney and district judge who granted defendant immunity from prosecution in the criminal case had no authority to bind the Grievance Committee

in this disbarment proceeding. The disbarment proceeding is a civil case. Houtchens v. Mercer, 119 Tex. 431, 29 S.W.2d 1031, 69 A.L.R. 1103; Burns v. State, Tex. Com.App., 103 S.W.2d 960; Hankamer v. Templin, 143 Tex. 572, 187 S.W.2d 549. There is nothing in the record which shows or tends to show that the district attorney or the district judge who granted immunity to the defendant in the criminal case in any way indicated to the defendant that he was being granted immunity from this disbarment proceeding.

 By his third point defendant contends the trial court erred in overruling his motion for continuance. Defendant presented what he terms a first application for a continuance. The record, however, shows that it was his second application. Defendant alleged in his motion for continuance that he could not safely go to trial because of the unavailability of two witnesses, W. C. Brickey, Jr., and Mariannes A. Emerson, because of pending indictments in the criminal district court of Bexar County against each of said witnesses. Both of said witnesses appeared and testified on the motion for continuance; they each testified that they would not testify in the disbarment proceeding until and unless all of the pending indictments were dismissed and until limitation had run against them. The granting or overruling of a motion for continuance as a rule is addressed to the sound discretion of the trial court. Erback v. Donald, Tex.Civ.App., 170 S.W.2d 289 (Writ Ref.); Butcher v. Tinkle, Tex. Civ.App., 183 S.W.2d 227 (Writ Ref.); Dittmar v. St. Louis Union Trust Co., Tex. Civ.App., 155 S.W.2d 388 (Writ Ref.). We hold the trial court did not abuse its discretion in overruling the motion for continuance. It is claimed in the application for continuance that the witnesses would give material testimony with regard to the allegation in plaintiff's petition in paragraph f and its Exhibit E attached to the pleadings. Counsel for plaintiff withdrew and dismissed from plaintiff's petition all of the allegations in paragraph f and the

allegations as to Exhibit E. When this was done counsel for defendant asked leave to amend his motion for continuance and make it apply to all of the allegations in plaintiff's petition. The court refused the request and overruled the motion for continuance and proceeded with the trial. In our minds there are several reasons why the court did not err in overruling the motion for continuance and refusing the request to amend. There are transactions in the record sufficient to uphold the judgment of the court with which the witnesses Brickey and Emerson had no connection. There is no showing in the record that the defendant could and would produce the evidence of the witnesses at the next term of court or within a reasonable time thereafter. In other words, the witnesses testified positively that they would not give evidence in this case until the criminal cases against them had been dismissed and limitation had run against them. This would be an unreasonable delay of the trial and the court acted clearly within its rights and without abuse of discretion in overruling the motion.

 The court, in addition to disbarring defendant as an attorney at law, enjoined him from holding himself out as an attorney at law, accepting a fee for legal services, performing any legal service whatsoever, using any letterheads, envelopes or other printed stationery, or from having his name printed on the door of his office in connection with the words "attorney at law", "counselor at law" or "lawyer". The defendant contends there was no pleading authorizing the court to grant this injunctive relief. We find no merit in this contention. We hold that the trial court was authorized to enter this judgment in connection with the order disbarring defendant as an attorney at law. The injunction granted was incidental to the main suit and the court had jurisdiction on its own motion to grant such injunction to make the disbarment effective. Brown v. Faulk, Tex. Civ.App., 231 S.W.2d 743.

We have considered all other points of error presented by defendant and find no reversible error in any of them. The judgment is affirmed.