KUHN, COLLINS & RASH, et al., Appellants,

v.

Gary M. REYNOLDS, Appellee.

No. 8806.

Court of Civil Appeals of Texas, Texarkana.

March 10, 1981.

Rehearing Denied April 7, 1981.

Jay Doyle, Kuhn & Collins, Austin, for appellants.

Ernest F. Bogart, Jr., Austin, for appellee.

BLEIL, Justice.

This is a suit between lawyers on a written contract to divide the total fee to be received in a personal injury case. The firm of Kuhn, Collins & Rash appeals from a judgment entered on a jury verdict.

In early December of 1975, Edmond Kaase called Gary Reynolds to seek legal advice and representation on a matter arising out of injuries he received in an automobile accident. Mr. Kaase discussed the case and the possible arrangements that might be made for handling the matter by Mr. Reynolds and the attorney's fees that would be charged. Several days later, Kaase and Reynolds met in person and entered into a contingent fee contract in which Reynolds agreed to represent Kaase for 30% of the total recovery which was to be ultimately recovered in his personal injury action.

In early January of 1976, Reynolds received a telephone call from the law firm of Kuhn, Collins & Rash inquiring about the status of his representation of Kaase. Reynolds was informed that there was a problem concerning his representation of Kaase. Reynolds immediately contacted Kaase and arranged to meet with him later that day. During their conference, Kaase related that he had conferred with the firm of Kuhn, Collins & Rash and that he now wanted them to handle his case. Kaase and Reynolds discussed their respective rights under the contingent fee contract of December 9, 1975.

After meeting with Kaase, Reynolds telephoned Kuhn, Collins & Rash and explained that his client desired to have that law firm represent him. Reynolds indicated that he would send over the pertinent matters from his case file and that he would forward to them a referral agreement to take care of his interests in the personal injury cause of action. These items were forwarded by mail on January 7, 1976.

That same day Mr. Kaase entered into a form of a contingent fee contract with Kuhn, Collins & Rash wherein they agreed to represent him in the personal injury action. A handwritten interlineation showed that Reynolds also had been retained as an attorney in the case and that Kuhn, Collins & Rash was to make arrangements with him. The signed contract, dated January 8, 1976, in which Reynolds and Kuhn, Collins & Rash agreed to divide the total fee on the basis of one-third and two-thirds, respectively, was returned by mail to Reynolds. During the course of the year, several telephone calls were made by Reynolds to Kuhn, Collins & Rash concerning the status of the case. For the first time in January of 1977, Kuhn, Collins & Rash indicated that there might be a question about their

agreement with Reynolds. After discussion between the parties, Reynolds ultimately wrote a letter to a Mr. Bob Kuhn, one of the partners he had dealt with and the person who had raised a question about the agreement. In that letter, Reynolds requested that Kuhn, Collins & Rash honor their agreement by payment of one-third of the legal fee received upon final settlement. No payment was ever made and finally in November of 1977 this suit was filed. Judgment was entered on a jury verdict awarding Reynolds $6,666.66 on the basis of his contract and $3,350.00 reasonable and necessary attorney's fees for the prosecution of this cause, together with interest from date of judgment.

On appeal appellants' first and primary point of error is that this type of fee splitting agreement between attorneys is unethical, against public policy, and is for this reason unenforceable by Gary Reynolds.

Kuhn, Collins & Rash urge that it is the duty of the court to determine whether a contract is contrary to public policy; and that where the contract is against the law or public policy it will not be enforced. We agree. *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146 (1947).

An analysis of this matter requires that we first determine the nature of the public policy and then, with it in mind, see if that policy is violated by the terms of the contract.[1] Appellants suggest that the public policy violated is that as expressed in State Bar of Texas, Rules and Code of Profession-al Responsibility, DR 2–107 (1973) (located immediately following Tex.Rev.Civ.Stat. Ann. art. 320a–1 [1973]). Specifically, they claim the contract violates the part of that rule which says that a lawyer shall not divide a fee for legal services absent the consent of the client to such arrangement after full disclosure.[2] This disciplinary rule must be viewed in its context. It is a rule for enforcement of the ethical considerations which are expressed in Canon 2 of the Code of Professional Responsibility. That Canon provides, "A lawyer should assist the legal profession in fulfilling its duty to make legal counsel available." In applying the Disciplinary Rules, interpretive guidance is found in the basic principles set out in the Canons and in the objectives stated in the Ethical Considerations.

The appellant law firm quite correctly says that the Code of Professional Responsibility Disciplinary Rules are quasi-statutory. Our courts should be the last to condone violations of these ethical rules.

In analysis of any particular rule it is helpful to turn away from that particular rule and look to the overall purpose to be served by the rules as a whole. The Texas Code of Professional Responsibility is taken in large part from the American Bar Association Code of Professional Responsibility. In that preamble is found the standard to which lawyers must strive.

"Lawyers, as guardians of the law, play a vital role in the preservation of society.

---

1. The full text of the contract, signed by the parties, is as follows:

"It is understood and agreed between GARY M. REYNOLDS and KUHN, COLLINS & RASH that if and when the case of Edmond Kaase v. Debbie Nell Pryor, an action for personal injuries, shall be settled or compromised or handled to a final conclusion, the fee arrangement between the undersigned will be as follows:
"(a) 33⅓% of the total fee to GARY M. REYNOLDS as the forwarding attorney;
"(b) 66⅔% of the total fee to KUHN, COLLINS, & RASH.
"It is also agreed that Gary M. Reynolds shall be tendered a copy of the settlement check from the Defendant or proper evidence of the total fee charged and received in this case."

2. Disciplinary Rule 2–107 reads as follows:

"(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
"(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
"(2) The division is made in proportion to the services performed and responsibility assumed by each, or is made with a forwarding lawyer.
"(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.
"(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement."

The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. A consequent obligation of lawyers is to maintain the highest standards of ethical conduct." The Preamble to the American Bar Association, Code of Professional Responsibility (With Amendments, February 1979), taken from the American Bar Association, Canons of Professional Ethics, 1908.

■ The particular policy which underlies Ethical Considerations 2–1, 2–21, and 2–23, and DR 2–107 is that persons represented by lawyers in this State should be able to have a choice in finally determining who represents them and the nature of the legal fees which will be charged.[3] Contingent fee contracts are in no manner violative of public policy. *Mandell & Wright v. Thomas*, 441 S.W.2d 841 (Tex.1969). Such arrangements in civil cases have long been commonly accepted in the United States. The historical bases of their acceptance are that, (1) they often provide the only practical means by which one having a claim against another can afford a competent lawyer to assist in the prosecution of his claim, and (2) a successful prosecution in the claim produces a source of funds from which a fee can be paid. State Bar of Texas, Rules and Code of Professional Responsibility, EC 2–20. This questioned contract is an agreement between Reynolds, as a forwarding attorney, and Kuhn, Collins & Rash, as handling attorneys, to divide the total contingent fee received in the case.

■ The contract between Reynolds and Kuhn, Collins & Rash is one which is specifically recognized by policy expressed in our State Bar Rules. On its face, it does not violate any law or public policy of this State. We then look to the circumstances under which the contract was entered into to see if there is any illegality or violation of public policy that was proven by appellants in the trial of the case. *Gill v. Smith*, 233 S.W.2d 223 (Tex.Civ.App.—Galveston 1950, writ ref'd n. r. e.).

Kuhn, Collins and Rash submits that the jury's answer to Special Issue No. 2 established that DR 2–107 was not complied with and that therefore the agreement should not be enforced. The issue inquired whether the jury found that Kaase, as client, "... was not fully informed of a fee splitting arrangement ...", or "... did not consent to a fee splitting arrangement...." It was answered, "We do." *Fleming v. Campbell*, 537 S.W.2d 118 (Tex. Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.), is said to require that the contract be held to be against public policy in light of the answer to that special issue. The facts of this case are readily distinguishable from the facts in the *Fleming* case. A close look at the undisputed facts present in this case reveal that DR 2–107 has in no manner been violated.

■ In this case, Appellee Reynolds is a forwarding attorney. The reasonableness of the total fee is not in question. The only remaining applicable requirement of DR 2–107 is that the client consent, after a full disclosure of the fee division arrangement, to the *referral* to another lawyer. This is not a typical case in which one lawyer refers a client to another lawyer. In this case, Kaase, the client, chose to go to Kuhn, Collins & Rash after he had already contracted with Reynolds for representation on a contingent fee basis. In his dealings with Kuhn, Collins & Rash it was openly recog-

---

3. "EC 2–1. The need of members of the public for legal services is met only if they recognize their legal problems, appreciate the importance of seeking assistance, and are able to obtain the services of acceptable legal counsel. Hence, important functions of the legal profession are to educate laymen to recognize their legal problems, to facilitate the process of intelligent selection of lawyers, and to assist in making legal services fully available."

"EC 2–21. A lawyer should not accept compensation or any thing of value incident to his employment or services from one other than his client without the knowledge and consent of his client after full disclosure."

"EC 2–23. A lawyer should be zealous in his efforts to avoid controversies over fees with clients and should attempt to resolve amicably any differences on the subject. He should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client."

nized that a fee arrangement between the lawyers would exist and this is evidenced by the fact that there was a specific handwritten provision in the agreement between Kaase and Kuhn, Collins & Rash, requiring that the law firm make arrangements with Gary Reynolds, who had been retained by Kaase. The arrangements were made between Reynolds and the law firm. The conduct of Gary Reynolds is in no manner violative of any rule, law or public policy as contended by Kuhn, Collins & Rash. Appellants did not establish any facts which might render this agreement unenforceable. Point of Error One is overruled.

Appellants also urge that there is no consideration to support the contract. In a suit on a written contract only the contract needs to be plead. The burden is on a defendant to deny under oath and then prove lack of consideration. *Wright v. Robert & St. John Motor Co.*, 122 Tex. 278, 58 S.W.2d 67 (1933); Tex.R.Civ.P. 93(j). No such allegations were made under oath. Nothing in the verdict of the jury is tantamount to a finding that there was no consideration. There is sufficient evidence of full consideration to support the contract. The point of error complaining that there was no consideration to support the contract has no merit and is overruled.

The appellants' last points of error assert that there is no evidence to support the jury's answer to Special Issue No. 1, and that their answer is against the great weight and preponderance of the evidence. This issue asked the jury, "Do you find from a preponderance of the evidence that Edmond Kaase's hiring of Defendant Kuhn was not a direct result of Plaintiff's referring Kaase to Kuhn?" They answered, "We do not." No objection as to the form of this issue was made and indeed it is submitted in the precise wording requested by appellants. There is sufficient probative evidence to support this finding and it is not against the great weight and preponderance of the evidence. Further, this special issue finding of the jury does not form the basis of the trial court's judgment. All points of error are overruled.

The judgment of the trial court is affirmed.