**Frederick M. BARON, Appellant,**

v.

**MULLINAX, WELLS, MAUZY & BAAB, INC., Appellee.**

**No. 8951.**

Court of Appeals of Texas,
Texarkana.

Oct. 6, 1981.

Rehearing Denied Oct. 27, 1981.

---

**458**

Winston L. Borum, DeHay & Blanchard, Dallas, for appellant.

Otto B. Mullinax, Mullinax, Wells, Baab & Cloutman, Dallas, for appellee.

BLEIL, Justice.

This is a suit between lawyers seeking to declare valid and enforceable a written contract to divide part of a fee. The trial was to a jury, and after both sides rested, each requested that the case be withdrawn from the jury and judgment entered in their behalf. The trial court withdrew the case from the jury, and entered a judgment declaring the agreement between these lawyers valid and enforceable.

The issue on appeal is whether the trial court correctly declared the agreement to be valid and enforceable. We hold that the trial court properly granted the declaratory judgment and in all things affirm that judgment.

The law firm of Mullinax, Wells, Mauzy & Baab, Inc. filed suit for a declaratory judgment that a written agreement with its former associate, Frederick Baron, concerning the division of legal fees is a valid and enforceable contract. The history of the relationship between the parties and the background of the underlying transactions is helpful to an analysis of the matters involved in this appeal.

The law firm hired Frederick Baron as a salaried associate lawyer after he was graduated from law school in 1971. At first he worked primarily in the area of personal injury litigation. In 1973, the firm was hired in some of the early asbestos litigation. Shortly thereafter, Mr. Baron began to devote much of his time to those cases.

In April of 1975, while still an employee of the firm, Baron was contacted by a Florida lawyer who represented four Florida residents on the basis of contingent fee employment contracts in asbestos injury claims. After Baron and another associate attorney met in Miami with the Florida lawyers, they determined to work together in the prosecution of the asbestos injury claims. This agreement was formalized by the exchange of two letters.

On April 15, 1975, Frederick Baron wrote to the Florida lawyers on behalf of Mullinax, Wells, Mauzy & Baab, Inc., confirming the oral agreement. He relayed his understanding, that the four clients had signed 40% contingent fee contracts, and that any attorney's fees earned on any one or all of those four cases were to be split equally between the Florida lawyers and the appellee law firm. Each firm was to pay its own travel expenses and other major expenses were to be paid by the appellee law firm, with all expenses to be deducted from the ultimate recovery in those lawsuits. Frederick Baron, on behalf of Mullinax, Wells, Mauzy & Baab, Inc., was to be primarily responsible for preparing the cases for trial in the Miami Federal Court, but settlement negotiations were not to be undertaken or finalized unless agreement between both sets of attorneys was reached.

On May 1, 1975, one of the Florida attorneys, on behalf of himself and his partner, replied in writing that they were in basic agreement with the contents of the letter. However, they desired the agreement to include a provision that it should cover not only work product of the Texas law firm gathered in the four cases that were to be jointly handled, but also that the Texas firm utilize the matters it had developed in other asbestos cases, such as depositions, research and other work product not specifically mentioned. He stated that they were eager to begin litigating the cases and requested that if the Texas law firm was in agreement with the additional matters raised in the letter that the letter should be signed and returned to them. This was done and these two letters constituted that agreement.

In late June or early July of 1975, Frederick Baron told the appellee law firm that he intended to leave the firm at the end of August 1975. He did in fact leave at that time. The Mullinax, Wells, Mauzy & Baab firm relayed that it had agreed before he left the firm that he would retain responsibility for those four Florida cases, among others not involved in this litigation. Other testimony indicated that at the time Baron left the firm he requested that these cases be referred to him for further handling, and agreed that he would pay the firm a referral fee. Mr. Baron testified that before he left the law firm at the end of August 1975, there was no discussion whatsoever about the four Florida asbestos cases. In any event, there was an agreement dated September 12, 1975, concerning those cases which was entered into after Mr. Baron left the law firm.

The letter agreement on which this controversy centers, contained the following pertinent parts:

"You have discussed with this firm the possibility of your continuing to work with the lawyers in Miami in the prosecution of the above entitled and numbered cause.

. . . . .

"The firm has decided to agree to your request to refer this case to you for future handling with the understanding that upon the successful conclusion of the case that you will receive two-thirds (⅔) of the fee originally contracted for with the firm in Miami and we will receive one-third (⅓). The expenses to be borne, as they accrue, upon the same basis, namely, two-thirds (⅔) to you and one-third (⅓) to us.

. . ."

This letter was signed by Mullinax, Wells, Mauzy & Baab, Inc. and accepted and agreed to by Frederick Baron.

After Frederick Baron left the firm and agreed with them as to the handling of the cases, he researched the law concerning that type of fee-splitting agreement. His research led him to conclude that the agreement was not valid. He then decided to continue handling the cases himself but not to divide the legal fees received as agreed.

At the outset we must decide which state's law is applicable. Appellant Baron insists that the "contingent fee referral agreement" sued on is a Florida contract; that no intent was manifested as to whether Texas or Florida law was to control; that the asbestos-related injury cases were pending in Florida; that those injured were Florida residents; and that Florida law should apply. In support of this contention, he urges the case of *Castilleja v. Camero*, 414 S.W.2d 424 (Tex.1967). It holds that a contract made in one jurisdiction which relates to, and is to be performed in, another jurisdiction is governed by the laws of the place of performance. He further contends that when the ethical rules of the State of Florida, as they relate to that agreement, are applied, then that agreement is invalid because it is against public policy.

This argument misses the mark. The agreement sought to be declared valid and enforceable by the appellee law firm simply is not a contingent fee referral agreement. This proceeding was brought under the Uniform Declaratory Judgment Act, Tex. Rev.Civ.Stat.Ann. art. 2524–1, to declare valid and enforceable the agreement as set forth in the letter dated September 12, 1975, from the Mullinax, Wells, Mauzy & Baab law firm and approved and agreed to by Frederick Baron. That agreement is one made in Texas between resident Texas attorneys and is to be performed in this State.

Prior to *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979), the common-law rule in tort cases in Texas was that the law of the place where the cause of action arose would apply. That case held that the applicable conflicts law in such cases was the most significant relationship test as set out in Sections 6 and 145 of the Restatement (Second) of Conflicts. This test has been extended to other areas. *Robertson v. McKnight*, 609 S.W.2d 534 (Tex.1980). The most significant relationship test applicable is found in Sections 6 and 188 of the Re-

statement (Second) of Conflicts.[1] Under all three subsections of Section 188, Texas law is applicable. It clearly is the state with the most significant relationship to this declaratory action; and further, it is both the place of negotiating the contract and the place of performance.

■ Without regard to the Restatement, our law is that the intention of the parties as to which law is applicable shall be governing and that in the absence of a contrary manifestation of that intent, the presumption is that they intend the law of the state where the contract was made to govern. *Austin Building Company v. National Union Fire Insurance Company,* 432 S.W.2d 697 (Tex.1968). Further, the place of performance ordinarily determines the law to be applied. *Castilleja v. Camero,* supra. No matter what test is applied or which rule is followed, the inescapable conclusion is that the Texas rules governing the conduct of attorneys should be applied in this dispute between Texas lawyers over the validity of an attorney's fee contract made in, and to be performed in, this State.

■ Next, to render the agreement invalid Baron relies on Disciplinary Rule 2–107, State Bar of Texas, Rules and Code of Professional Responsibility (located immediately following Tex.Rev.Civ.Stat.Ann. art. 320a–1 (Vernon 1973)).[2] When a contract is against the law or public policy it will not be enforced. *Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146 (1947). Thus, we are required to determine whether the contract is against public policy as set forth in Disciplinary Rule 2–107. The policy behind this disciplinary rule is that persons represented by lawyers in this State should be able to choose who finally represents them and the type of legal fees to be charged. *Kuhn, Collins & Rash v. Reynolds,* 614 S.W.2d 854 (Tex.Civ.App.—Texarkana 1981, writ ref'd n. r. e.).

■ The agreement in this case was between a law firm and its former associate concerning litigation which the appellant attorney and appellee law firm were working on when they were associated. As an associate of that firm, Baron had worked on these cases with other lawyers in that firm. Then, as a part of the process of Baron's separation from the firm, it agreed with him as to the handling of the cases involved and in the manner of the division of legal fees generated from those cases. This agreement does not violate any law, public policy, or the policy of Disciplinary Rule 2–107. At the outset the fee would be a division between a firm and its associate,

---

1. Section 188, entitled, "Law Governing in Absence of Effective Choice by the Parties", provides:

   "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
   (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
   (a) the place of contracting,
   (b) the place of negotiation of the contract,
   (c) the place of performance,
   (d) the location of the subject matter of the contract, and
   (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
   These contacts are to be evaluated according to their relative importance with respect to the particular issue.

   (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203."

2. Disciplinary Rule 2–107 reads as follows:
   "(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
   (1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
   (2) The division is made in proportion to the services performed and responsibility assumed by each, or is made with a forwarding lawyer.
   (3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.
   (B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement."

and later would ripen into a payment to a former associate pursuant to the agreement reached on his separation.

Baron cites *Fleming v. Campbell*, 537 S.W.2d 118 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.), as being both on point and controlling of this controversy. That case involved attorneys who made a fee-splitting referral agreement without the knowledge or the consent of the client. The court held such a contract to be against the public policy expressed in Disciplinary Rule 2–107, and thus void and unenforceable. Appellant Baron contends that since there was no showing in this case that the clients either were informed or gave their consent, this agreement should be declared unenforceable. Since this agreement was between a law firm and an associate of the firm during the overall process of his separation from that firm, there is no requirement that the clients either be informed or give their consent. The clients are in no manner affected by this agreement. Disciplinary Rule 2–107 should not be too readily construed as a license for attorneys to break a promise, go back on their word, or decline to fulfill an obligation, in the name of legal ethics.

 Appellant further argues that the first contract between Mullinax, Wells, Mauzy & Baab and the Florida attorneys was itself invalid. Therefore, he contends it is not possible for the contract in question to be valid, because it depends upon the proceeds to be received under the first contract. Frederick Baron is still operating pursuant to, and treating as valid, that earlier agreement. Shortly before he gave testimony in the trial of this case, he received approximately $56,000.00 as a fee pursuant to that earlier agreement. That agreement, in which attorneys agreed to jointly work on the cases to provide greater expertise for the benefit of the clients, is in no manner invalid. In any instance appellant cannot claim it to be invalid for purposes of this suit, all the while treating it as valid and receiving substantial benefits under it for other purposes. *Empire Gas & Fuel Company v. Albright*, 126 Tex. 485, 87 S.W.2d 1092 (1935); 22 Tex.Jur.2d Estoppel § 11.

Appellant also contends that this case should be reversed because the appellee law firm did not make his current firm a party. In December of 1977, Frederick Baron with another formed a professional corporation named Baron & Cowley, P. C. Each became a 50% shareholder and an employee of the firm at that time. Baron insists that it is that law firm, and not himself, with an interest in the litigation in controversy and therefore that the Baron & Cowley firm is a necessary party. He cites *Scott v. Graham*, 156 Tex. 97, 292 S.W.2d 324 (1956), in support of this contention. That case, which simply provides the test for whether a person is a necessary party, does not support appellant's argument. Had Baron desired, he could have brought in Baron & Cowley as an additional party under Tex.R.Civ.P. 37. Anyway, this is a suit seeking a declaratory judgment determining the validity of a contract. The parties to that contract are before the court. The professional corporation of Baron & Cowley was not an indispensable party and no error is shown to have occurred by their failure to have been brought in by either of the parties.

We hold that the contract between Mullinax, Wells, Mauzy & Baab and Frederick Baron is valid and enforceable. All points of error raised on this appeal are overruled.

We affirm.