**James LEMOND, Appellant,**

v.

**Joseph D. JAMAIL and John Gano, Appellees.**

**No. 01–87–00505–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 29, 1988.

Rehearing Denied Feb. 2, 1989.

Carnegie H. Mims, Jefferson, Mims, Plummer & Rice, Houston, for appellant.

Linda Broocks, Richard Virnig, Baker & Botts, John Gano, Gano & Donovan, Houston, for appellees.

Before JACK SMITH and COHEN, JJ., and GERALD T. BISSETT, Senior Judge.

## OPINION ON MOTION FOR REHEARING

GERALD T. BISSETT, Senior Judge, Sitting by Assignment.

Appellant James Lemond's motion for rehearing is granted. The previous opinion delivered by this Court on September 15, 1988, and the judgment rendered on that date, are withdrawn, and this opinion, and the accompanying judgment are substituted therefor.

This is an appeal by James Lemond, plaintiff/appellant ("Lemond"), an attorney, from a take-nothing judgment rendered in a suit to recover a "referral fee" of one-third of the net attorney's fees paid to John Gano ("Gano") in a case that was settled by the latter for $150,000. Trial was to the court. We affirm.

In the fall of 1974, Lemond handled a workmen's compensation action for Julius Jones. Shortly thereafter, Jones asked Lemond to initiate a medical malpractice case against Dr. Alexander Brodsky, who had performed surgery on Jones. Lemond and Jones met with Robert Stein, of the law firm of "Jamail & Gano," who took down information about Jones' case, had Jones sign a power of attorney to "Jamail & Gano," and delivered the file to Joseph D. Jamail ("Jamail") to determine whether the case would be accepted by the firm.

On October 10, 1974, Lemond received a letter from the firm of Jamail & Gano, signed by Jamail, stating that the firm was accepting the referral on the Jones case and would pay him one-third of the net attorney's fees recovered. Seven months later, on May 7, 1975, an original petition in the *Jones v. Brodsky* suit was filed, signed by John Gano on behalf of the firm of Jamail & Gano.

In January of 1978, Gano wrote Jones advising him that he was leaving the firm of Jamail & Gano and would no longer be handling his case. Later that same month, Jamail informed Gano that he was withdrawing from all malpractice cases and that Gano could take them over. On February 2, 1978, Gano took the files, including the *Jones v. Brodsky* file, and signed a receipt for Jamail. Jamail notified Jones that he was withdrawing from his case.

On April 19, 1978, Jones wrote Gano stating that he had received withdrawal letters from both Jamail and Gano and that he was looking for his file. Gano responded that he had Jones' file and that he was handling the case.

Jones' lawsuit against Dr. Brodsky was settled in May 1981 for $150,000. Lemond, when he became aware of the settlement, wrote Gano requesting one-third of the net attorney's fees as per the referral agreement. Three demand letters followed, but Gano did not respond except for sending Lemond a copy of the case, *Fleming v. Campbell*, 537 S.W.2d 118 (Tex.Civ.App.— Houston [14th Dist.] 1976, writ ref'd n.r.e.).

Lemond filed the instant lawsuit against Jamail and Gano on February 24, 1983. Final judgment was signed on April 30, 1987, wherein it was decreed that Lemond "take nothing by his suit against either or both of the defendants, Joseph Jamail and John Gano."

It is undisputed that the law firm of "Jamail & Gano" was a sole proprietorship, owned entirely by Jamail. Gano and Stein were either associates or employees of Jamail. In any event, they were not partners

of Jamail, and the name "Jamail & Gano" was nothing more than an assumed name under which Jamail did business. It is further undisputed that Jamail did not handle the *Jones v. Brodsky* case, and that the case was actually handled by Gano after he left the employ of Jamail. It is also undisputed: (1) the $150,000 fee was paid to the law firm of "Gano & Houssiere, P.C." and the "file" in the *Jones v. Brodsky* case was assigned to it (by Gano) in September 1979, when the firm was established; and (2) Jamail never received any portion of the fee.

Lemond testified that during the initial conference with Stein, that the latter ("Stein") explained the fee-splitting arrangements to him and Jones and asked Jones whether he understood those arrangements. He also testified that after this visit with Stein, he discussed the arrangement with Jones and made it absolutely clear that Jones would not be paying double attorney's fees as the result of the fee-splitting arrangement.

Stein, however, testified that he did not discuss the fee-splitting arrangement in the presence of Jones during the initial conference nor at any other time. He stated that he was sure of this because the standard practice at the time of the initial conference was not to inform clients of any referral agreements or fee-splitting.

Jones stated in his deposition that Lemond took him to Jamail & Gano; that they wrote him accepting his case; and that there was never any discussion in the office of Jamail & Gano as to whether Lemond would receive any part of the attorney's fees. Jones did not testify at trial.

Lemond and Gano each filed proposed findings of facts and conclusions of law. The findings and conclusions proposed by Gano were "approved" by the trial court and became the findings and conclusions of the trial judge. Lemond did not except to such action, accepted the findings and conclusions as approved, and challenged some of them in this appeal.

At the end of trial, the judge asked that each side submit proposed findings of fact and conclusions of law, and then stated:

> Now, this may be a little bit irregular, and if it is, I will consider objections. But, if an affidavit, or deposition, or something of Mr. Jones, again, whereby I have absolute proof, or as much as I can get, that he was aware of the fee settlement, it would make my task easier.

The record contains the affidavit of Jones that was filed April 22, 1987, seven days after the end of the trial, which states:

> In 1974, Mr. James Lemond recommended the law firm Jamail & Gano to handle that case for me against Dr. Brodsky, and took me to their offices where they took on handling that case for me. From the time Mr. Lemond first talked to me about that case and took me to their offices, neither Mr. Lemond, nor anyone at Jamail & Gano, nor anyone at all, on through the time of settlement of the case in 1981, ever mentioned to me that Mr. Lemond was expecting to be paid any part of the attorney's fees in my case, and I certainly never agreed to such a thing.

There were no objections to the filing of the affidavit. All parties were present when the trial judge made the foregoing statement. No one voiced any objections as to the trial court's statement. The affidavit was filed among the papers in this case on the date stated. Lemond did not file a motion to strike the affidavit. Under the record, we conclude that it was tacitly agreed by all parties that an affidavit might thereafter be filed, and since it was filed, Lemond has waived all objections thereto, if any he had.

Lemond contends that the finding by the trial judge that Jones was never informed of the fee-splitting arrangement is "against the great weight and preponderance of the evidence." We do not agree.

■ In reviewing such a point of error, we must consider and weigh the all the

evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–35 (Tex.1986).

There is a conflict in the evidence as to whether Jones was informed about the fee-splitting arrangement between Jamail and Lemond. Both Jones and Stein testified that there was never any discussion in the presence of Jones relating to such arrangement. Lemond testified otherwise.

The duty of an appellate court is to review the evidence as presented in the trial court, and not to substitute its judgment for that of the trier of fact, whether judge or jury. *Spoonmore v. Board of Polygraph Examiners,* 608 S.W.2d 360 (Tex. Civ.App.—Austin 1980, writ ref'd n.r.e.). The trier of fact, as the exclusive judge of the credibility of the witnesses and of the weight to be given to their testimony, has the right to believe one witness and disbelieve another, or to believe part of the testimony of a witness and disbelieve any other part of such testimony. *Schwab v. Stewart,* 387 S.W.2d 939, 943 (Tex.Civ.App. —Amarillo 1964), *writ ref'd n.r.e. per curiam,* 390 S.W.2d 752 (Tex.1965). The fact that the testimony of an interested party conflicts with the testimony of another witness, as is the case here, merely presents the additional issue of what degree of credibility his testimony should be afforded. *Gomez v. Franco,* 677 S.W.2d 231, 236 (Tex.App.—Corpus Christi 1984, no writ); *Williams v. Lemens,* 609 S.W.2d 596, 600 (Tex.Civ.App.—Austin 1980, no writ).

■ In the case at bar, after considering and weighing all of the evidence, we cannot say or hold that the challenged finding of fact by the trial court is so against the great weight and preponderance of the evidence as to be manifestly unjust.

Viewing the record as a whole, we conclude that the evidence is sufficient to support the trial court's finding that Jones was never informed of the fee-splitting arrangement and that he never agreed to such arrangement.

Referral agreements are governed by Supreme Court of Texas, Rules Governing the State Bar of Texas art. XII, § 8 (Code of Professional Responsibility) DR 2–107 (1973), wherein it is stated:

(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

Lemond argues that he is not required to prove that Jones agreed to the fee-splitting agreement because DR 2–107 does not require written or oral approval of the fee-splitting agreement, but only full disclosure of the fee-splitting arrangement. Furthermore, he states that the only consent required is consent "to employment of the other lawyer." He is correct in his arguments; however, those arguments, standing alone, do not require a reversal in this case.

In *Fleming v. Campbell,* 537 S.W.2d 118, 119 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.), Fleming referred Murphy's case to Campbell, who orally agreed to pay Fleming a referral fee of one-half the attorney's fees. Later, Campbell referred Murphy to Ballard and agreed to split the attorney's fees in Murphy's case with Ballard. Because it was admitted that Murphy was unaware of the fee arrangement between Fleming and Campbell, the court held that the referral fee contract claimed by Fleming was as a matter of law against the public policy expressed in DR 2–107 that no attorney's fees shall be divided unless the client's consent is obtained after full disclosure, and that the referral fee contract between Fleming and Campbell was void and unenforceable. The facts of the present case are similar to those in *Fleming.*

Lemond relies on *Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 462 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). However, *Baron* is distinguishable because it involves a written contract to divide a fee between a law firm and its associate during the overall process of the associate's separation from that firm. Such a situation does not require the informing or consent of clients. *Baron*, 623 S.W.2d at 462.

In substance, the trial judge, in his finding and conclusion number five, which is attacked by Lemond, found and concluded that the referral agreement is void and unenforceable as being against public policy because Jones, the client, was never informed of the fee-splitting agreement between Lemond and Jamail, and never consented to such arrangement after full disclosure. That finding, although as worded is rambling and perhaps overly broad, does not present reversible error. Under the facts as found by the trial court, the referral agreement is unenforceable under the laws of this state.

Lemond further asserts that the trial court erred in finding that his claim was barred by the statute of frauds, because the statute of frauds is inapplicable to the case. We agree.

The statute of frauds states that a promise by one person to answer for the debt of another is not enforceable unless the promise is in writing and signed by the person to be charged with the promise. Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987).

The record reflects that the letter outlining the referral agreement was signed by Jamail. The letter was on "Jamail & Gano" stationery. Gano did not sign the letter nor was there any evidence that he promised, in writing, to pay Lemond the referral fee. Lemond brought suit to enforce a written referral agreement; therefore, the statute of frauds does not apply.

We sustain Lemond's point of error wherein it is claimed that the trial court erred in finding that his claim was barred by the statute of frauds. However, this does not constitute reversal error because Gano's mere knowledge of the referral agreement does not make him liable for its payment to Lemond. As stated in *Fleming*, "[Ballard's] mere knowledge of Campbell's promise to pay Fleming one-half of the attorney's fees in Murphy's case was in no way binding upon [Ballard]." 537 S.W.2d at 120.

Lemond also contends that the trial court erred in rendering a take-nothing judgment against him because the evidence is undisputed that Jamail and Gano each have honored other referral agreements, but have inexplicably refused to honor the agreement made the basis of this lawsuit.

Whether Jamail and Gano have honored other referral agreements is irrelevant to the fact that the referral agreement in the present case is void and unenforceable for failure to disclose to Jones, the client, the division of fees. *Fleming*, 537 S.W.2d 118.

The judgment of the trial court is affirmed.