Melvin K. ATKINS, Individually and d/b/a Case Assistance Investigating Co., Appellant,

v.

William J. TINNING, Appellee.

No. 13–92–368–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 14, 1993.

Rehearing Overruled Nov. 30, 1993.

Melvin K. Atkins, Corpus Christi, Daniel Rutherford, San Antonio, for appellant.

Scott T. Cook, William A. Dudley, Corpus Christi, for appellee.

Before KENNEDY, DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

KENNEDY, Justice.

Melvin Atkins, a private investigator, sued William J. Tinning, an attorney, for various claims arising from Tinning's refusal to abide by the terms of an alleged oral contract. Atkins appeals from the grant of Tinning's motion for summary judgment. We reverse and remand.

Atkins alleges that Tinning hired him as an investigator and evidence gatherer on various cases in 1984. Atkins alleges that Tinning represented that Atkins would receive an hourly fee on certain types of cases, but would receive a percentage of the recovery after settlement on other types. Atkins accepted the offer. He worked for Tinning for some years and received payment in both ways. Atkins alleges that, on the percentage fee cases, he always received one-third of the attorney's fee at the end of the case.

Atkins alleges that he began working on a case for Richard Escobar under the post-settlement percentage fee method. Tinning

concluded the case, earning a $900,000 fee, one-third of which Atkins alleges was his. When he requested his fee, Atkins alleges that Tinning filed barratry charges against him, had him arrested, and had him tried. Atkins was acquitted.

Atkins sued Tinning for breach of contract, fraud, false imprisonment, abuse of process, malicious prosecution, and defamation. Tinning moved for summary judgment on March 12, 1992, contending that the statutes of limitation had run and that the contract as alleged was illegal and void. Tinning attached no proof to his motion. Atkins represented that he received the motion on March 15, 1992.

The court set a hearing on the motion on April 3, but rescheduled to April 10, 1992, when Atkins complained that the setting was too early under Tex.R.Civ.P. 166a(c), which requires movants to file and serve the motion at least 21 days before the hearing, absent leave of court. On April 9, 1992, Atkins sought leave of court to file a response to the motion within seven days of the hearing. Tex.R.Civ.P. 166a(c). The court, in its summary judgment order, stated that it did not consider the motion for leave, did not grant leave, and did not consider the response or the attached affidavit. Proceeding on the pleadings alone, the court found that there was no issue of material fact and that Tinning was entitled to judgment as a matter of law.

■ By point of error one, Atkins alleges that the court erred in failing to consider his motion for leave to file a late response to Tinning's motion for summary judgment. Atkins contends that the original, premature hearing date and seven-day continuance put him in a position where he had no choice but to request leave to file a response. Viewed from the April 3 hearing date upon the granting of the seven-day continuance, Atkins is correct. Eighteen days passed, however, between Atkins's receipt of the motion and the original hearing setting. Atkins had sufficient, though not ample, time to file a response (or a motion for extension of time) before seven days from the original setting. The court did not abuse its discretion in not granting the motion. Any error in failing to

consider the motion is harmless. We overrule point one.

■ By points of error two and three, Atkins attacks the two possible bases of the summary judgment. When a defendant moves for summary judgment on several theories and the trial court enters a non-specific judgment, we affirm the summary judgment if any of the theories is valid. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied). We examine the pleadings to determine whether any genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). We indulge every reasonable inference and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985).

By point two, Atkins challenges the statutes of limitations prong of the motion. Tinning contends that Atkins's causes of action are time-barred under either a two- or four-year statute of limitation. He contends that the petition, filed in 1992, alleges causes of action accruing in 1984. Thus, he argues, Atkins filed at least four years too late.

■ Causes of action do not accrue until wrong is done or apparent. For instance, the cause of action for breach of contract accrues, not at the formation of the contract, but at the breach itself. *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex.App.—Dallas 1992, writ denied); *Wichita Nat'l Bank v. United States Fidelity Guar. Co.*, 147 S.W.2d 295, 297 (Tex.App.—Fort Worth 1941, no writ). The petition alleges that the parties entered the contract in 1984, but does not specify the dates of any other event. Instead, the petition alleges that Tinning complied with the contract "[f]or some years" before breaching it and committing other wrongs. No evidence defining the term "some years" was before the court. In the absence of any evidence, we must indulge the reasonable inference that the number of years necessary to bring the events within the relevant limitations periods passed. A similar analysis preserves the other causes of action. The court

**536**

erred if it granted summary judgment based on statute of limitations. We sustain point two.

By point three, Atkins contends that the court erred in granting summary judgment based on the illegality of the contract. Tinning contends on appeal that "[b]ecause the agreement alleged in plaintiff's petition was clearly different from the agreement to pay plaintiff for services rendered, Appellee raised the issue of illegality." Based on the record, we cannot tell what the "agreement to pay plaintiff for services rendered" was, nor can we see why any difference between the alleged agreement and this other agreement necessarily raised the issue of illegality.

 We note initially that Atkins did not allege an agreement that violates the barratry statute. The barratry statute prohibits persons from taking the following actions with intent to obtain an economic benefit for themselves: instituting a suit knowing they have no interest in it, instituting a suit knowing it is false, soliciting legal work for themselves or others, or procuring another to solicit legal work for them or others. TEX.PENAL CODE ANN. § 38.12 (Vernon Supp. 1993). Atkins's allegation of fee-splitting for investigative work did not state a violation of the barratry statute. The Fort Worth court recently wrote that "the sharing of fees with a layman by a lawyer is prohibited by statute, as well as by disciplinary rule," but that case dealt with an alleged agreement that clearly violated the barratry statute. *Plumlee v. Paddock*, 832 S.W.2d 757 (Tex.App.—Fort Worth 1992, no writ). In *Plumlee*, an ambulance company owner alleged that a lawyer paid him a set fee plus a percentage of attorneys' fees for personal injury case referrals. *Id.* at 758. The court upheld a summary judgment in favor of the attorneys because Plumlee's petition alleged an agreement that violated the barratry statute. *Id.*

at 759. The court emphasized that the statute makes barratry an offense for both the lawyer and the nonlawyer. *Id.* The court quoted the supreme court's comment to the new Disciplinary Rule 5.04, which states

> The provisions of Rule 5.04(a) express traditional limitations on sharing legal fees with nonlawyers. The principal reasons for these limitations are to prevent solicitation by lay persons of clients for lawyers and to avoid encouraging or assisting nonlawyers in the practice of law.

*Plumlee*, 832 S.W.2d at 760. These concerns do not apply here because Atkins did not allege that he was receiving fees for soliciting cases or practicing law.

The Atkins–Tinning agreement alleged may have violated the State Bar of Texas's Disciplinary Rule 3–102.[1] The rule states that "[a] lawyer or law firm shall not share legal fees with a nonlawyer," subject to exceptions inapplicable here. *Id.*[2] If the agreement violated the disciplinary rule, Tinning could face sanctions. The question of whether the agreement violates the rule is the subject of a separate lawsuit on appeal in this court, *State Bar of Texas v. Tinning*, No. 13–92–270–CV, —— S.W.2d —— (Tex. App.—Corpus Christi 1993).

 We face a different question here. We must determine whether the alleged contract was illegal, not whether it was improper and unprofessional for a lawyer. The State Bar rules were adopted "for the operation, maintenance and conduct of the State Bar and for the disciplining *of its members.*" State Bar Rules, art. II, § 3 (1984) (emphasis added); *see also* TEX.DISCIPLINARY R.PROF.CONDUCT Preamble §§ 10 & 15 (1989). The rules do not govern the behavior of nonlawyers except tangentially in governing how lawyers may interact with them. *See Touchy v. Houston Legal Foundation,*

---

1. State Bar Rules, art. X, § 9, DR 3–102 (1984). Similar language is contained in the current rules. *See* TEX DISCIPLINARY R.PROF.CONDUCT 5.04(a) (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1992) (STATE BAR RULES art. X, § 9).

2. Comment 3 to the current rule 5.04, cited in the previous footnote, states

> [t]hus, the payment of an annual or other bonus does not constitute the sharing of legal fees if the bonus is neither based on a percentage of the law firm's profits *or on a percentage of particular legal fees* nor is given as a reward for conduct forbidden to lawyers.

(Emphasis added). This strongly indicates that the agreement alleged here violates the current rule.

432 S.W.2d 690, 694 (Tex.1968). Violation of the rules subjects only an offending attorney to sanctions. State Bar Rules, art. X, § 8 (1984); *see also* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1992) (STATE BAR RULES art. X, § 8).

The place of the disciplinary rules in the larger legal system is unclear. We, and other courts, have termed them quasi-statutory. *State v. Dancer,* 391 S.W.2d 504, 506 (Tex. Civ.App.—Corpus Christi, writ ref'd n.r.e.). The court of criminal appeals declined to include disciplinary rules within the definition of "statute" in interpreting a statute that required suppression of evidence obtained in violation of state statutes. *Henrich v. State,* 694 S.W.2d 341, 342 (Tex.Crim.App.1985). Other courts have held that the State Bar Rules have the force and effect of law. *Polland & Cook v. Lehmann,* 832 S.W.2d 729 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Lemond v. Jamail,* 763 S.W.2d 910 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *Kuhn, Collins & Rash v. Reynolds,* 614 S.W.2d 854 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *Fleming v. Campbell,* 537 S.W.2d 118 (Tex.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). These courts used the disciplinary rules to evaluate fee-sharing agreements between lawyers, voiding agreements that violated the rules as against public policy. *Lehmann,* 832 S.W.2d at 736; *Lemond,* 763 S.W.2d at 913–914; *Reynolds,* 614 S.W.2d at 856–57; *Fleming,* 537 S.W.2d at 119. These cases are distinguishable because they involved agreements between lawyers bound to comply with the disciplinary rules, whereas here we have an attorney seeking to invoke the rules against a nonlawyer. Other courts have flatly said that the disciplinary rules have the same force and effect of statutes. *State Bar of Texas v. Wolfe,* 801 S.W.2d 202, 203–04 (Tex.App.—Houston [1st Dist.] 1990, no writ); *State v. Malone,* 692 S.W.2d 888, 896 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.); *State Bar of Texas v. Edwards,* 646 S.W.2d 543, 544 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). The *Wolfe* and *Malone* cases cited *Edwards,* which in turn relied on *Arnett v. State* and *Brown v. Linkenhoger,* cases which held that the rules created by the supreme court have the force and effect

of law because they are made pursuant to legislative or constitutional mandate. *Arnett,* 304 S.W.2d 386, 389 (Tex.Civ.App.—Eastland 1957, writ ref'd n.r.e.) (effect of state bar rules in disbarment proceeding); *Brown,* 153 S.W.2d 342, 344 (Tex.Civ.App.—El Paso 1941, no writ) (challenge to procedural rules of supreme court). Each of the cases regarding state bar rules used the "force and effect" language as boilerplate preceding application of standard statutory construction techniques to the rules. *Wolfe,* 801 S.W.2d at 204; *Malone,* 692 S.W.2d at 896; *Edwards,* 646 S.W.2d at 544; *Arnett,* 304 S.W.2d at 389. They did not face the question of whether the rules had the power to bar a nonlawyer from enforcing an agreement against an attorney.

■ We decline to treat the disciplinary rules as equivalents of criminal statutes in this context. As we said in *Dancer,* the disciplinary rules "have the same force and legal effect *upon matters to which they relate* as the Texas Rules of Civil Procedure have to matters to which they relate." 391 S.W.2d at 506 (citations omitted, emphasis added). The disciplinary rules as invoked here govern attorney behavior, not the behavior of all citizens. Though entry into a fee-splitting agreement might subject Tinning to professional discipline, the agreement itself is not invalid solely because it violates his professional duties.

Public policy does not favor finding on these pleadings alone that the alleged contract was illegal. Atkins alleged that he entered the fee-sharing arrangement as compensation for performing investigatory work. He alleged that he did the work and was not paid. We do not condone violation of the disciplinary rules; neither do we believe that an attorney, charged with knowing the disciplinary rules, should profit from his violation and subsequent invocation of those rules at the expense of a nonlawyer who is not charged with knowing those rules.

No basis for Tinning's claim that the contract was illegal is apparent on the record. The court erred if it granted the motion for summary judgment based on the illegality of the contract. We sustain point three.

We have found that neither of the bases Tinning urged in his motion is a valid grounds for granting the motion. We reverse and remand to the trial court for further proceedings.