O. W. ARNOLD ET AL., EXR'S, v. MARY DEAN.

(Case No. 1799.)

1. WILLS.— The personal estate of a testator is the primary source to which resort must be had to raise funds for the payment of legacies and debts, and such legacies and debts cannot be made a charge upon the real estate first, unless the evidence of such being the intention of the testator is clear.

2. CONSTRUCTION OF WILLS.— The rule that doubtful words in a will cannot be construed to have the effect of exempting the testator's personal property from the payment of debts and legacies, or charging them on the real estate, will be especially enforced when the real estate has already, by the will, been made the subject of a special legacy, and the mode and time of its final disposition provided for in the will.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

The questions involved in this suit originated out of the construction of the last will and testament of John Dean, deceased. The will was probated in Galveston county and the estate was fully administered by the executors, when application was made to the probate court for direction as to the disposition of the property remaining undisposed of.

The probate judge entered a decree, giving direction as to what should be done with the property remaining. Mary Dean, representing her children, prosecuted an appeal to the district court from the decree of the probate court.

On hearing of the cause on appeal, the district judge set aside the decree of the probate court.

The following was assigned as error:

1st. The court erred in reversing the judgment of the county court of Galveston county, rendered February 24, 1883.

2d. The court erred in not ordering the sale of the Milford plantation, in Montgomery county, willed to Patrick Dean, and the undivided one-fourth interest in the four thousand four hundred and eighty-six acres of land in Haskell county, willed to Reuben B. Dean's wife and children, and the one-eighth interest in the Haskell county land, willed to William A. Dean's wife and children.

3d. The court erred in holding that the following words in the will of John Dean, "After paying my debts, I request that the legacy left to O. W. Arnold's children, the $150 to Mrs. Swann for two years, and the $50 to Aylett Dean, shall first be provided for, and the remainder, if any, to be divided *pro rata*, and I request my executors to have nothing to do with law or lawyers, and turn over assets *pro rata*, after Arnold's three children, Mrs. Augusta Swann and Aylett Dean are first provided for in full. My executors are required to settle all disputes, if any should occur, between the legatees, and if they do not abide by the decision of my executors, such are to be wholly deprived of all interest in my estate," did not make the legacies to the Arnold children, Clara, Anne and John D. Arnold, and to Aylett Dean and to Mrs. Swann a charge upon the land willed to Reuben B. Dean's wife and children, William A. Dean's wife and children, and Patrick Dean.

4th. The court erred in holding that said quoted portions of said will neither directly nor by implication make the said specific devises of the Haskell county land and the Milford plantation chargeable with any of the legacies, etc.

The following is from John Dean's will: "In the name of God. Amen! I, John Dean, being in sound mind and memory, upon due reflection revoke all previous wills, and make this my last will and testament, on the 25th day of October, 1877, with the intention of changing, or amending, as I have hereto done, should I deem it proper to do so at any time before my death, and now name Owen W. Arnold, of Montgomery county, and N. B. Sligh, of Galveston, as my executors.

"I request my executors to have nothing to do with law or lawyers, and to turn over assets *pro rata*, after Arnold's three children, Mrs. Swann and Aylett Dean are provided for in full.

"My executors are required to settle all disputes, if any should occur, between the legatees, and if they do not abide by the decision of my executors in all disputed matter, such are to be deprived of all interest in my estate. I will and bequeath to Reuben B. Dean's wife and children $1,000 in city bonds, with the request that his wife, Mary, shall have exclusive control of the bonds and invest the interest for the benefit of her children and self, so long as she can do so and live without absolute want, to support herself and children. I also give to Reuben B. Dean's children, in trust to their father and my executors, an undivided one-fourth interest in a tract of land I own in Haskell county, containing four thousand four hundred and eighty-six acres, say four thousand four hundred and eighty-six acres; the said land not to be disposed of in any way until 1888,— taxes to be paid by each party interested. Item 2. I give to William A. Dean's wife and children, including William's two daughters by his first wife, $1,000 in corporation bonds, and $1,000 cash, from the proceeds of my estate, and one-eighth interest in my Haskell county lands. The said gifts to William A. Dean's family I leave in special trust to O. W. Arnold, and in the event of his death to his brother, E. L. Arnold, the money and bonds to be invested and used as circumstances seem to require; but I indulge a hope that the children may be supported for several years without encroaching on the principal or interest. The land not to be disposed of until 1888, and not then if deemed imprudent.

". . . Item 8th. I give to Henry C. Dean, Henry J. Dean, Thomas C. Dean and David Dean all that may remain of the Milford plantation not disposed of at my death.

"Item 9th. I give to Patrick Dean, freeman of color, for his faithful services and attachment to me, two hundred acres of land from the Milford plantation, with fair average value with the balance of the tract, and $200 cash.

". . . Item 11th. I will to my beloved *protégés*, Minnie Arnold's (deceased) three children, Clara, Anne and John D. Arnold, each $2,000 in cash; and to John D. Arnold alone the residue of my four thousand four hundred and eighty-six acres of land in Haskell county, about two thousand and eight hundred acres (this land was located at an early period, good and titles clear), none of which is to be sold until 1888, when the other donees may require a division; but I wish Mr. Arnold to hold John's part till he becomes of age, and, in the event of his death, it is to go to his two sisters, Anne and Clara.

"Item 12th. I will my niece, Augusta Swann, $150 per annum for two years, to be paid to some trusty person, for her special benefit, and what furniture I may leave on my place on Cedar Bayou, and my place to be rented to her son and son-in-law at a reasonable price, they to support their mother at a reasonable price during her life.

"Item 13th. As Frank Dean, wife and family have had a full share of my means, I will them only $50 per year towards supporting their child, Aylett Dean, and request my executors to sell my furniture and rent them my dwelling-house and lots on Church street, conditioned that they pay taxes and insurance and, in addition, a moderate rent thereof; and I advise the sale of this property when a fair price can be obtained, and give Frank Dean and his wife the refusal.

"Item 14th. After paying my debts, I request that the legacy left to O. W. Arnold's children, the $150 to Mrs. Swann for two years, and the $50 to Aylett Dean shall first be provided for, and the remainder, if any, to be "devider" *pro rata*.

(Signed)                                        "JNO. DEAN.

· "Witnesses:
        "R. S. WILLIS,
        "J. G. GOLDTHWAITE."

Other facts as to the condition of the estate and as to its administration appear in the opinion.

*A. R. Campbell*, for appellants, cited: Lewis *v.* Darling, 16 How. (U. S.), 1; Lupton *v.* Lupton, 2 Johns. Ch., 614; Brandt's Appeal, 8 Watts, 198; Steves *v.* Grigg, 10 Gill & Johns., 143; Reynolds *v.* Reynolds, 16 N. Y., 257–260; Clyde *v.* Simpson, 4 Ohio (U. S.), 445–455; English *v.* Harvey, 2 Rawle, 305; Ripple *v.* Ripple, 1 Rawle, 586; Wallace *v.* Wallace, 3 Foster, 149; Burnett *v.* Burnett, 3 Stew. (note 1), 595; Jarman on Wills, vol. 3, p. 108; Leading Cases in Equity, vol. 2, pp. 266–7; Hill on Trustees, 360.

*B. T. Masterson*, for appellee, cited: Moore *v.* Hardison, 10 Tex., 467; Curry *v.* York, 3 Tex., 357; Anding *v.* Perkins, 29 Tex., 348; Johnson *v.* Blount, 48 Tex., 45; Davis *v.* Calhoun, 41 Tex., 556; Hendrick *v.* Cannon, 5 Tex., 248; Herndon *v.* Bremond, 17 Tex., 434; Wigram on Wills, 241, 243; Jarman on Wills, marg. p. 601.

WEST, ASSOCIATE JUSTICE.— This case has been presented for our consideration in the most careful and satisfactory manner, both by briefs and oral arguments of the respective parties. We have ourselves also examined, as thoroughly as the demands upon our time would permit, the different points raised in the case. Not only have all the authorities cited by both parties been considered, but many others bearing more or less directly on the questions in hand have also been resorted to, and studied in this connection.

It would serve no good purpose, in a case of this character, to give at length all the reasons that have induced us to come to the conclusion we have reached.

We shall, therefore, content ourselves with stating in general terms the result of our investigations.

There can be no doubt but that the general rule is, that the personal estate of the testator is the primary fund to be resorted to for the payment of legacies, as also of debts. All the English authorities, especially those of an early date, and a great many very highly respectable American authorities can no doubt be found, that hold that this course of resorting to the personal estate as the primary fund for the payment of legacies is not to be changed by the courts, or departed from, except in cases where the evidence of the intention of the testator is clear. Doubtful words in a will are not to have the effect of exempting the testator's personal property from the payment of legacies, or of charging them on the real estate.

More especially is this general rule enforced by courts in cases where the real estate sought to be subjected to the satisfaction of the legacies in question has been already specially, and in the most unmistakable manner, made the subject of a special legacy, and the mode and tone of its final disposition expressly provided for in the will.

In cases of this character, Mr. Redfield, in his work on Wills, has laid down the true rule very clearly, when he remarks in vol. 2, p. 208, as follows: " The cases are very numerous where the terms used have been held sufficient to charge the payment of legacies upon real estate; but it would be scarcely useful to occupy time and space in repeating them here, as they would not govern other cases not entirely similar."

Applying this rule to the case in hand, it appears with reasonable certainty from the judgment of the court, and the terms of the will, and from the report and account of the executors found in the record, that when the will was written, and when the testator died, there were sufficient assets on hand to have paid the preferred legacies out of the general funds of the estate, and even to have left a surplus. Causes transpiring after his death, and some of which he had supposed he had guarded against in his will, occasioned the deficiency in the general assets, if, in fact, they are insufficient to pay the legacies.

The record shows a considerable amount paid as attorneys' fees to different parties. It also shows a considerable amount paid out to compromise and end a law suit. Also, there appears to have been heavy and unusual and unanticipated expenses and costs attending the administration.

It is clear from the will that the three children of O. W. Arnold, Mrs. Swann, and Aylett Dean, were intended to be favored legatees; it is also plain, for reasons hinted at in the will, that when the will was written they occupied a "place nearer the heart of the testator" (to use Chief Justice Gibson's expression, in a somewhat similar case) than did the other legatees.

But it seems equally clear to us, when we consider that at that time, and when he died, the assets were sufficient to pay all debts and discharge these special legacies without a sale of the real estate now sought to be sold, that it was not the intention of the testator to subject the lands in question to sale for this purpose, especially when he had provided that the land in Haskell county should not be sold until the year 1888, and had specially devised the Milford plantation. In fact, to give the will the construction contended for by the appellants, would, we think, rather tend to defeat than to carry out the intention of the testator.

The case would be before us in a more satisfactory manner if there had been a statement of the facts proved on the trial in the district court, or if the judge had been requested to give, and had given, in a formal manner, his conclusions of fact and law.

As the matter is now presented to us, after a careful examination of the record, and after giving due consideration to all the points presented so fully and faithfully by counsel, we are of the opinion that there is no error in the judgment. It is therefore affirmed.

AFFIRMED.

[Opinion delivered March 4, 1884.]