**Opinion filed February 17, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00341-CV

_____

## TEXAS PETROLEUM LAND MANAGEMENT, LLC, ROBERT RALPH RIGGS, ELIZABETH ANN RIGGS LAWRENCE, AND JEANE HANCOCK RIGGS WELLER, Appellants

## V.

## DOROTHY KALMBACH MCMILLAN, KATHRYN MCMILLAN TAYLOR, AUSTIN TRUST COMPANY, AND NANCY M. HIGGS, Appellees

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 52811**

## O P I N I O N

This case arises out of a title dispute to a mineral estate in Howard County, Texas. All parties moved for summary judgment, and the trial court granted the two identical motions for summary judgment filed by the defendants/Appellees: one filed by the McMillan Appellees—consisting of Dorothy Kalmbach McMillan, Kathryn McMillan Taylor, and the Austin Trust Company—and the other filed by pro se

Appellee Nancy M. Higgs.  In granting the McMillan Appellees' motion, the trial court declared that Appellants' countermotion for summary judgment was moot.

Appellants challenge the rulings of the trial court in four issues.  In their first and second issues, Appellants argue that the trial court erred in granting Appellees' motions for summary judgment and declaring Appellants' countermotion as to the McMillan Appellees moot.  In their third issue, Appellants argue that the trial court erred in denying Appellants' motion to supplement their response to the McMillan Appellees' motion for summary judgment with an untimely offered document purporting to ratify the conveyance of the disputed property to Appellants.  Finally, in their fourth issue, Appellants aver that the trial court erred in denying Appellants' motion to reconsider the order granting the McMillan Appellees' motion for summary judgment and declaring Appellants' countermotion moot.  We affirm.

*Background Facts*

*1928–1933 – A.M. McMillan's purchase and devise of mineral interest*

In 1928, Paul C. Bundy conveyed to A.M. McMillan (McMillan) an undivided fifty-acre interest in all of the oil, gas, and other minerals in and under a 200-acre parcel of property in Howard County, Texas (the McMillan property).[1]  We interpret the conveyance to be a 1/4 mineral interest or fifty net mineral acres.  McMillan died on August 6, 1932.  McMillan appointed Republic National Bank & Trust Company (RNB) as both independent executor of his estate and as trustee of a testamentary trust containing the residue of his estate.  As independent executor, RNB was authorized by the terms of the will to make payments out of the general and principal assets of the estate in order to settle any outstanding estate debts.  As trustee, RNB was authorized under the terms of the will to sell trust property, including real estate,

---

[1]The 200-acre tract was described as the North two hundred (200) acres of the East one-half (1/2) of Section 12, Block 32, T-1-N T & P Ry. Co. Survey, Howard County, Texas.

for purposes other than to satisfy the estate's debts, but *only* with the consent of his wife, Minnie McMillan (Minnie).

In his will, McMillan devised to Minnie, in fee simple, their homestead along with the household furniture and furnishings, as well as his automobiles, personal jewelry, and clothing. McMillan devised "[a]ll of the rest, residue and remainder of [his] property" to RNB, as trustee of a testamentary trust for the benefit of Minnie and for their son once he reached twenty-one years of age. With the exception of the homestead, all of McMillan's real property became trust property immediately upon his death.

*1933 – The Hinn and Curry deeds*

On December 27, 1933, RNB, in its capacity as independent executor, executed two mineral deeds nearly identical in form. RNB attempted to convey to Albert George Hinn (Hinn) an undivided sixteen and two-thirds acres interest in and to all of the oil, gas, and other minerals in and under the aforementioned McMillan property (the Hinn deed). That same day, RNB, again acting in its capacity as independent executor, attempted to convey to S.E. Curry (Curry) an undivided five acres interest in and to all of the oil, gas, and other minerals in and under the McMillan property (the Curry deed). The two deeds are essentially identical except for the size of the property interest conveyed. Both deeds state that the conveyance "is for the purpose of partitioning certain oil and mineral properties owned jointly by said A.M. McMillan and [Hinn][Curry], legal title to which was vested in said A.M. McMillan." The Hinn deed was filed and recorded two months after it was made. The Curry deed, on the other hand, was filed and recorded well over six years after it was made. Appellants are the heirs and current holders of any interest Hinn acquired in the McMillan property as a result of the Hinn deed.

*1955–1963 – The Curry Ratification and the 1963 Ratification*

In its original conveyance to Curry, RNB in its capacity as the estate *executor* purported to convey the 5-acre mineral interest. However, on January 29, 1955, RNB, now acting in its capacity as *trustee*, executed and filed a document acknowledging that "a question has been raised as to the authority of said executor [RNB] to make such conveyance [--that, made to Curry]." By this new document, RNB as trustee did thereby "ratify and confirm" the executor's deed of December 27, 1933, to Curry; Minnie also signed the 1955 ratification and clarification. In that document, Minnie ratified the Curry deed "for the purpose of evidencing her consent." The text of the document indicates that a question arose as to the executor's authority to make such a conveyance. RNB authored and Minnie signed no similar document ratifying the Hinn deed.

However, on April 9, 1963, Minnie submitted a document to a probate court in Hale County, Texas, affirming that she elected to receive benefits under McMillan's will, rather than to assert her community property rights. In that document, Minnie also stated that she "ratifies all acts and things that have been done in the past in regard to the administration of said estate by the Executor and Trustee" (the 1963 Ratification). Unlike the Curry Ratification, there is no use of the word "consent" (alluding to the will's requirement of Minnie's "consent" in the sale of real property), and there is no specific reference to the Hinn conveyance or any other sale of real property. Its context appears to be acts and omissions of RNB in conjunction with Minnie's initial election to receive benefits under the will

*The procedural history of this case*

Appellants sued Appellees to quiet title, try title, and seek a declaratory judgment that Appellants are entitled to receive royalty payments for the oil, gas, and mineral production from the McMillan property. The McMillan Appellees counterclaimed and filed a traditional and no-evidence motion for summary

4

judgment asking the trial court to grant declaratory relief and quiet title in their favor. In its response to the McMillan Appellees' motion for summary judgment, Appellants included a countermotion for summary judgment, asserting that they are entitled to declaratory relief and royalty payments for the oil, gas, and other minerals from the property. A hearing on the McMillan Appellees' motion for summary judgment was held on May 1, 2019. A separate hearing on Appellants' countermotion for summary judgment was scheduled for May 30, 2019.

On May 3, 2019, Appellants tried to supplement their response to the McMillan Appellees' motion for summary judgment with the 1963 Ratification—in support of their position that Minnie ratified all actions taken by RNB in its capacities as independent executor and trustee, including the Hinn deed. The record indicates that Appellants received a copy of the 1963 Ratification on July 6, 2017, nearly two years before the hearing on the McMillan Appellees' motion for summary judgment. The trial court admitted the 1963 Ratification to supplement Appellants' countermotion for summary judgment, which was set to be heard on May 30, 2019, but excluded it as supplemental evidence in Appellants' *response* to the McMillan Appellees' motion for summary judgment, the hearing for which had already taken place two days prior.

On May 21, 2019, nine days before the hearing on Appellants' countermotion for summary judgment, the trial court granted the McMillan Appellees' traditional and no-evidence motion for summary judgment and declared that Appellants' countermotion was moot. Appellants then moved for the trial court to reconsider its order granting the McMillan Appellees' motion for summary judgment. The trial court subsequently denied Appellants' motion to reconsider.

On June 20, 2019, Appellants filed a motion for summary judgment on their identical claims against the other appellee, Nancy Higgs (Higgs), who appeared pro se. Appellants made the same arguments in their motion for summary judgment

against Higgs as they did in their motion for summary judgment against the McMillan Appellees, but here, Appellants made timely use of the 1963 Ratification and argued that Appellants were the beneficiaries of a passive or dry trust upon McMillan's death, that McMillan's estate was presumed to have debts at the time RNB conveyed property to Hinn in its capacity as independent executor, and that Appellee Higgs bore the burden of proving an absence of estate debts. Appellee Higgs responded and moved for traditional and no-evidence summary judgment, advancing no new argument but "adopt[ing] and incorporat[ing] by reference the McMillan pleadings, evidence, and arguments, in their entirety."[2] On October 7, 2019, the trial court granted Appellee Higgs's motion for summary judgment. Appellants thereafter instituted this appeal on November 6, 2019.

## Discussion

### I. Issues One and Two – The trial court did not err in granting summary judgment for Appellees and declaring Appellants' countermotion for summary judgment to be moot.

#### A. Standard of Review

"We review an order granting summary judgment de novo, generally taking as true all evidence favorable to the nonmovant and indulging every reasonable inference in the nonmovant's favor." *Concho Res., Inc. v. Ellison*, 627 S.W.3d 226, 233 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). A party moving for traditional summary judgment has the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "[A] defendant who conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of

---

[2]As such, anywhere we mention an argument advanced by Appellees, we are referring to an argument asserted by the McMillan Appellees and Appellee Higgs alike.

an affirmative defense is entitled to summary judgment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

An order granting a no-evidence motion for summary judgment will be affirmed "when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Thus, "a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id.* (citing TEX. R. CIV. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharm.*, 953 S.W.2d at 711).

Generally, when parties move for summary judgment on both traditional and no-evidence grounds, we begin our analysis by first reviewing the no-evidence motion for summary judgment. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). But, if the movant in a traditional motion challenges a cause of action on an independent ground, we consider that ground first because it would be unnecessary to address whether a plaintiff met his burden as to the no-evidence challenge if the cause of action is barred as a matter of law. *Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 n.2 (Tex. App.—Waco 2012, no pet.) (considering traditional motion for summary judgment first because no-evidence

7

motion for summary judgment was "premised on a determination that the traditional motion sought to defeat as a matter of law"); *see also Womack v. Oncor Elec. Delivery Co. LLC*, No. 11-17-00233-CV, 2019 WL 3023516, at *3 (Tex. App.—Eastland July 11, 2019, pet. denied) (mem. op.).

When one party moves for summary judgment, "[w]e review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). But when, as here, *both* parties move for summary judgment and the trial court grants one motion but denies the other, "we review the summary judgment evidence presented by both sides and determine all questions presented[,]" "render[ing] the judgment as the trial court should have rendered." *Id.* (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)); *see also Trial v. Dragon*, 593 S.W.3d 313, 316–17 (Tex. 2019). Moreover, when the trial court's order does not specify the grounds upon which it grants summary judgment, as in the present case, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

B. *Analysis*

(i) Passive trusts

Appellants first contend that, because Hinn and McMillan were cotenants of the disputed property, (1) no conveyance from RNB to Hinn occurred, (2) there was

no sale or transfer from the executor, and (3) the Hinn deed documented a return of Hinn's own property, which had been saved in a passive trust[3] that resulted from McMillan's death. Appellants offer no further argument to support this conclusion. Appellants presented no summary judgment evidence of any agreement to hold property in a passive trust. Nor did Appellants present any summary judgment evidence to show that the chain of title into Hinn preceded the Hinn deed now before us. The sole sentence within the Hinn deed relied upon by Appellants states only:

> (This conveyance is for the purpose of partitioning certain oil and mineral properties owned jointly by A. M. McMillan, and Albert G. Hinn, legal title to which was vested in said A. M. McMillian.)

That sentence follows a proper description of the property and a recitation of the terms of sale.

Examining closely the sentence relied upon by Appellants, we note that it refers to McMillan's prior legal title, not Hinn's previous ownership of *this* property. As such, there is no summary judgment evidence of a passive trust.

The vague terms found in the Hinn deed are insufficient to demonstrate a passive trust. Appellants simply cite case law on how passive trusts are formed, without any application of that law to the facts at hand. Further, Appellants fail to support their contention with favorable language, if any, in the disputed Hinn deed. There is no apparent nexus between the caselaw on passive trusts and the facts of this case.

---

[3]"A dry or passive trust may arise in at least two situations. . . . First, an express trust may become a dry trust or passive trust when 'the purposes of the trust hav[e] been accomplished'. . . . Second . . . when a trustee is given no affirmative powers and duties." *Rife v. Kerr*, 513 S.W.3d 601, 611–12 (Tex. App.—San Antonio 2016, pet. denied) (citing *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 249 (Tex. 1984); *Lanius v. Fletcher*, 101 S.W.1076, 1078 (Tex. 1907)). "If the only requirement of a trustee is to hold the property 'for the use and benefit' of another, then the trust is a dry or passive trust." *Id*. at 612 (citing *Zahn v. Nat'l Bank of Commerce of Dallas*, 328 S.W.2d 783, 791 (Tex. App.—Dallas 1959, writ ref'd n.r.e.); *Griggs v. Jefferson Bank & Tr. Co.*, 57 S.W.2d 390, 391 (Tex. App.—Texarkana 1933, writ dism'd)). "The trustee of a passive trust 'generally is responsible only for conveying the property to the beneficiary or in accordance with his directions.'" *Id.* (quoting *Nolana Dev. Ass'n*, 682 S.W.2d at 250).

Regardless, Appellants' argument fails because it unacceptably "begs the question."[4] The ultimate question that we must decide in this case is the authority of the executor to issue the Hinn deed. The answer to this question determines the validity of the Hinn deed. Appellants are using the Hinn deed as evidence of a pre-existing passive trust. But using an after-the-fact conveyance to attempt to prove the existence of a pre-existing passive trust is circular argument. Appellants' ultimate conclusion cannot constitute evidence for one of the arguments they forward to reach that very conclusion. Accordingly, Appellants have presented no evidence to support their argument that Hinn and McMillan were cotenants of this oil and gas interest or that a dry or passive trust was created at McMillan's death.

(ii) Ratification of the Hinn Deed

Appellants next contend that RNB's conveyance to Hinn was later ratified by Minnie, which cured any conveyance issue under the will. Appellees contend that, even if it is assumed that RNB had acted in its capacity *as trustee* in making the conveyance to Hinn, no evidence in the summary judgment record demonstrates Minnie's required consent. Further, Appellees contend that Minnie's global 1963 Ratification was not timely submitted in Appellants' reply to the no-evidence motion for summary judgment and it was not admitted by the trial court to rebut the motion of Appellees, *except* to that of Appellee Higgs. Appellees further assert that, even if it had been admitted, it could not, without more, be properly construed as referencing a ratified consent to the Hinn conveyance.

The McMillan Appellees argue that the trial court properly excluded Minnie's 1963 Ratification as to their motion for summary judgment because Appellants idly sat on that evidence for about two years, and failed to offer it until two days after the hearing on Appellees' motion. As to both the McMillan Appellees and Appellee

---

[4]"[A]ssume the truth of something without arguing it." *[B]eg the question*, OXFORD ENGLISH DICTIONARY (7th ed. 2012).

Higgs, they also assert that, on its face, the Hinn deed was executed in the bank's capacity as independent executor, not as trustee; therefore, Minnie's consent, or lack thereof, is simply *immaterial*.[5] In other words, Appellees contend that even if Minnie globally attempted to ratify every action taken by RNB in its capacities as independent executor and trustee, this would not generate a genuine issue of *material* fact because the presence or absence of Minnie's consent is irrelevant to actions taken by RNB in its capacity as independent executor.

Appellants counter that McMillan's will bestowed upon RNB, while acting in its role and capacity as independent executor, the broad powers of a trustee. Appellants essentially claim that the will did not bestow separate and distinct powers on RNB, demarcated by whether RNB was acting in its capacity as independent executor or as trustee. Rather, Appellants argue that the will gave RNB broad authority—while acting in its capacity as independent executor—to do whatever a trustee could do, irrespective of Minnie's consent. We disagree.

"It is well settled that the powers of an executor or administrator and those of a trustee are separate and distinct." *Smith v. Albright*, 261 S.W. 461, 465 (Tex. App.—Austin 1924, no writ). An independent executor's "power to sell at all arises from the duty imposed on the executor to provide for the payment of the decedent's debts." *Jackson v. Templin*, 66 S.W.2d 666, 670 (Tex. Comm'n App. 1933). Even when an entity is designated by will, "both as executor and as trustee . . . the offices are distinct and different." *Time Sec. v. West*, 324 S.W.2d 583, 586 (Tex. App.—San Antonio 1959, writ ref'd n.r.e.) (citing *Jackson*, 66 S.W.2d at 670). "One may

---

[5]The only noteworthy distinction between Appellants' countermotion for summary judgment against the McMillan Appellees and their motion for summary judgment against Appellee Higgs is that the latter included Minnie's 1963 Ratification. As we discussed in the preceding paragraphs, Minnie's 1963 Ratification is immaterial. Therefore, we need not distinguish between the McMillan Appellees and Appellee Higgs because there is no material distinction between Appellants' motions for summary judgment against them. For simplicity's sake, therefore, we henceforth refer to all of appellees in the collective as simply "Appellees," unless otherwise distinguished within the text.

possess the powers of an executor without possessing all the powers of a trustee, and because one is trustee over some, it does not follow that he is trustee over all property." *Id.*

Appellants rely on *Dallas Services for Visually Impaired Children, Inc. v. Broadmoor II* to reach their desired conclusion that RNB, *while acting in its capacity as independent executor*, was endowed simultaneously with the broad powers bestowed upon RNB as trustee under the terms of the will. 635 S.W.2d 572 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). Appellants' reliance on *Broadmoor II* is misplaced. In *Broadmoor II*, a sale of estate property was challenged on the ground that the sale was not necessary to satisfy any outstanding debts and to preserve the estate. *Id.* at 576. However, the will in that case expressly conferred upon the independent executors, *specifically in their capacity as such*, not only the power and authority to sell estate assets to satisfy debts and to preserve the estate but also, "whether or not the estate should become indebted to any person, the same rights and powers to control, manage, and dispose of the estate, that would be given a trustee under the provisions of the Texas Trust Act." *Id.* at 575.

The will in the present case, by contrast, conferred no such broad and extraordinary powers upon RNB in its capacity as independent executor. Thus, any broad powers of a trustee that RNB possessed were bestowed upon it in its separate and distinct capacity as trustee and were always subject to the consent and approval of Minnie. *See Lockhart as Tr. of Lockhart Family Bypass Tr. v. Chisos Minerals, LLC*, 621 S.W.3d 89, 104–06 (Tex. App.—El Paso 2021, pet. denied). These are not merely technicalities. Separation of the estate property and the property reserved by the will to the trust are important. Use of the limited estate property differs from that of the trust property, and the conditions under which real property can be liquidated protects the trust corpus from being unduly and prematurely exhausted before all of the purposes of the trust can be accomplished. *See Shor v. Pelican*

*Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 747–48 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Importantly, the bare fact that RNB, in addition to the powers it possessed in its capacity as independent executor, also possessed broad powers in its capacity as trustee is meaningless unless RNB executed the Hinn deed specifically in its capacity as trustee. *See Chisos Minerals*, 621 S.W.3d at 104. This does not mean that RNB was necessarily required to indicate the capacity in which it was acting when it conveyed the disputed property to Hinn. Rather, because RNB *did* specifically state that it was acting in its capacity as independent executor decisively precludes this court from finding that RNB was exercising the broad powers it possessed in its capacity as trustee. *See id.* Thus, RNB did not convey the disputed property to Hinn in its capacity as trustee, and as previously stated, the consent and approval of Minnie is immaterial.

Further, we cannot ignore that the Hinn deed and the Curry deed were virtually identical and were executed on the same day, and yet RNB identified and addressed this same issue as to the Curry deed. Because RNB conveyed the disputed property specifically and exclusively in its capacity as independent executor, that conveyance is only valid if it was made for the purpose of satisfying outstanding estate debts that could not have been satisfied with payments out of the principal and general assets of McMillan's estate.

Appellants' further argument, expressed and implied, is essentially that the 1963 Ratification constitutes the "consent" required in the will for RNB, as the trustee, to convey real property out of the trust corpus while also erroneously identifying itself in the Hinn deed as acting in its other role as executor of the estate. We hold that the 1963 Ratification does not constitute Minnie's consent, belatedly given, to the conveyance of an oil and gas interest by the trustee under the Hinn deed. In *BPX Operating Co. v. Strickhausen*, the Texas Supreme Court broadly

discussed the elements of ratification. 629 S.W.3d 189, 196–97 (Tex. 2021). While the supreme court was dealing with *implied* consent to an unauthorized pooling agreement manifested by surrounding circumstances, including the party receiving monthly royalty checks therefrom, *Strickhausen* identifies important legal elements of *express* ratification that are applicable here.

"Ratification is the adoption or confirmation by a person *with knowledge of all material facts of a prior act* which did not then legally bind him and which he had the right to repudiate." *Id.* at 196 (emphasis added) (citing *Wise v. Pena*, 552 S.W.2d 196, 199 (Tex. App.—Corpus Christi–Edinburg 1977, writ dism'd)). Within the 1963 Ratification there is no mention of the Hinn conveyance nor any real property conveyance out of the trust corpus that would allow us to conclude that Minnie had knowledge of all material facts with regard to the Hinn deed's conveyance of mineral interests. Rather, that document, which consists of only four sentences, merely states that the 1932 probated will of McMillan required that Minnie, as his wife, make an election—either to receive property under the will's estate and trust plan or to assert her rights to a division and taking of community property. It goes on to clarify that Minnie *did* elect to take under the will and, in the context of that election, explained that:

> [T]hrough oversight or mistake, no formal written acceptance on her part is now found of record. She does not have any independent recollection of having executed any formal acceptance in writing, but in order that the record may reflect the true intent of Minnie McMillan, she, here and now, accepts all the provisions set out in her husband, A. M. McMillan's will, *and that she, here and now, ratifies all acts and things that have been done in the past in regard to the administration of said estate by the Executor and Trustee.*

(Emphasis added).

By this document, Minnie clearly intended to create a record of her formal written acceptance of property devised to her under the will's estate and trust plan.

14

Read in context, there is no indication within the 1963 Ratification that her global statement "that she, here and now, ratifies all acts and things that have been done in the past in regard to the administration of said estate by the Executor and Trustee" refers to anything other than RNB's conveyance of property to her under the will's estate and trust plan. *See id.* at 196–97; *see also Smith v. Estill*, 28 S.W. 801, 805 (Tex. 1894) ("To constitute a ratification, it must appear that the acts relied upon were done with a full knowledge of all the facts, *and with intent to adopt the unauthorized act in question.*" (emphasis added)); *Jamail v. Thomas*, 481 S.W.2d 485, 490 (Tex. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.) ("By the term ratified . . . is meant the approval by act, word, or conduct, *with full knowledge of the facts*, of the prior act, *with the intention of giving validity to such prior act.*" (emphasis added)). Nothing within the context of this express ratification supports a conclusion that Minnie had knowledge of all material facts of RNB's conveyance of mineral interests to Hinn thirty years before, which did not then legally bind her, and which she had the right to repudiate but now intended to give her express consent.[6]

"Ratification is often treated as a mixed question of law and fact." *Strickhausen*, 629 S.W.3d at 196. When the facts are uncontroverted, however, the court may decide the question of ratification as a matter of law. *Id.* (citing *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 66 (Tex. 2015)). There is no evidence, other than the 1963 Ratification, regarding whether the Hinn deed was ratified by Minnie. Accordingly, whether the 1963 Ratification actually ratified the Hinn deed is a question of law that we must determine. As such, we hold that the

---

[6]Appellant contends alternatively that "[t]here is no requirement regarding what form the 'consent' must take. There is certainly no requirement that it be in writing or otherwise noted in the real property records." Regardless, if not written, there must be competent evidence of oral consent. No such evidence was filed in Appellants' responses to the Appellees' motions for summary judgment.

1963 Ratification is *not* evidence of Minnie's consent to the Hinn deed made thirty years before. Our holding is further confirmed when we juxtapose the specificity of context and express intent of the 1955 Curry deed ratification to Minnie's global statement of approval in the 1963 Ratification upon which Appellants rely to support their Hinn deed ratification argument.

Since this is a pure question of law, the 1963 Ratification would raise no disputed issues of material fact for a jury to decide *even if RNB had executed the Hinn deed in its capacity as trustee*. However, as we explained in subsection (i) *supra*, RNB executed the Hinn deed in its capacity as independent executor, not as trustee. As further discussed in subsection (iii) *infra,* Appellants had the burden to prove the existence of estate debts sufficient to justify the sale of real property from McMillan's estate, and their failure to present evidence to that effect entitled Appellees to the trial court's grant of their no-evidence summary judgment motion.

(iii) The burden of proving the existence or nonexistence of estate debts

Neither party proved the existence or nonexistence of estate debts at the time of the Hinn deed's execution. The record before us is devoid of that information,[7] so we consider both parties' respective summary judgment arguments as to why *the other party* bore the burden of proving the existence or nonexistence of estate debts.

Appellants contend that the existence of estate debts is *presumed* under the facts of this case and that Appellees failed to prove that McMillan's estate did not have outstanding debts when the sale and transfer of the disputed property from RNB

---

[7]*But see Sinnott v. Gidney*, 322 S.W.2d 507, 510 (Tex. 1959) (acknowledging that the general rule is that "the personal property of a decedent is the primary fund for the payment of debts and legacies"); *Arnold v. Dean*, 61 Tex. 249, 253 (1884) (holding that, "except in cases where the evidence of the intention of the testator is clear," "the personal estate of the testator is the primary fund to be resorted to for the payment of legacies, as also of debts"); *Warren v. Smith*, 620 S.W.2d 725, 726 (Tex. App.—Dallas 1981, writ ref'd n.r.e.) (reiterating the general rule that "the personal property of a decedent is the primary fund for the payment of debts and legacies unless the provisions of the will show an intent to the contrary").

to Hinn took place.[8]  Appellees counter that the general rule in Texas requires that the purchasers of real property from an independent executor of an estate, in this case Appellants, bear the burden of proving the existence of estate debts, rather than Appellees bearing the burden of proving their absence.[9]

"It is the settled rule surrounding the sale of real estate by an independent executor that where the sale was not authorized by the will the burden of proof is on the purchaser to show the existence of debts against the estate or other such conditions that would have authorized the probate court to have ordered the sale." *Gatesville Redi-Mix, Inc. v. Jones*, 787 S.W.2d 443, 445 (Tex. App.—Waco 1990, writ denied) (citing *Harring v. Shelton*, 122 S.W. 13, 14 (1909); *Roberts v. Carlisle*, 4 S.W.2d 144, 152 (Tex. App.—Dallas 1928, writ dism'd)).  Appellees correctly identify this general rule, citing *Freeman v. Tinsley*, 40 S.W. 835 (Tex. App.—San Antonio1897, no writ), and *Smith v. Hodges*, 294 S.W.3d 774 (Tex. App.—Eastland 2009, no pet.).  Appellants contend, however, that the general rule does not apply to this case and that we should apply an exception to the general rule that was announced in *Terrell v. McCown*, 43 S.W. 2 (Tex. 1897).  Appellants are mistaken.

In *Terrell*, the Texas Supreme Court held that, when a will *expressly confers* upon an independent executor *the power to sell* estate property in order to satisfy estate debts, rather than deferring to the courts to construe that power as implied by law in a will that is silent on the matter, that constitutes prima facie evidence that estate debts exist.  *Terrell*, 43 S.W. at 11–12.  The *Terrell* court gave the following explanation:

---

[8]Appellants also assert that there was evidence of debt insofar as McMillan owed Hinn his portion of the property that they had owned together as cotenants.  As we have already noted, this circuitous argument begs the question upon which we believe that no further discussion is necessary.

[9]Proving a negative is no easy task and imposing a burden to do so is generally disfavored under Texas law.  *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 397 (Tex. 2008) ("[P]roving a negative is always difficult and frequently impossible." (quoting *State Farm Mut. Auto. Ins. Co. v. Matlock*, 462 S.W.2d 277, 278 (Tex. 1970))).

It is fair to assume that the testator knew the condition of his business, and was in a position to form some idea as to what would be necessary to be done by the executors in the administration of his estate; and he having, in the will . . . conferred the power to sell to pay his debts, it would be against reason not to assume, at least prima facie, that there were debts to support such power . . . for, if the burden be upon the purchaser to show debts before he can claim under such power, then that clause conferring the power becomes wholly nugatory, since it is clear that, where the will appoints an executor, but makes no provision for power of sale, . . . the law implies a power of sale as necessary to a carrying out of the general intent of the testator that the administration should be independent of the orders of the court.

*Id.* at 12.

Appellants' reliance on *Terrell* is reasonable, on first blush, insofar as McMillan's will specifically states:

I direct that all of my just debts, including my funeral expenses and expenses incident to my last illness, and also all estate and inheritance taxes assessed my estate, and the expenses incident to the probating of this will, shall be paid out of the principal and general asset [sic] of my estate, by my Executor hereinafter named.

However, this language does not expressly authorize RNB to *sell* any real or other property from the estate in order to generate the funds from which to satisfy any outstanding estate debts. Compare this to the language from the will in *Terrell*:

I direct that all my just debts be paid as soon as possible, for which my executors shall have all the power to raise funds out of my effects that a court would give them, and for this purpose *to sell and convey lands* or other property.

*Id.* at 3 (emphasis added). McMillan's will specifically authorized that any estate debts be satisfied by payments "out of the principal and general asset[s] of [McMillan's] estate," whereas the will in *Terrell* specifically authorized that any estate debts be satisfied by *selling and conveying* real property from the estate. While subtle, this distinction makes a difference.

18

We decline Appellants' invitation to infer that express language in a will granting an independent executor the authority to satisfy estate debts by *making payments* from the general and principal assets of the estate is the same as an express conferral of power *to sell land* in order to satisfy such debts. We focus on the type of power or authority expressly granted to the independent executor, rather than simply searching for express mentions of estate debts in a will.

Our Texas Supreme Court explained, in *Terrell*, that the rationale for shifting the burden away from purchasers of estate property, when "the power to sell is expressly conferred by the will," is that "the testator knew the condition of his business, *and was in a position to form some idea as to what would be necessary to be done by the executors in the administration of his estate*." 43 S.W. at 12 (emphasis added). That is a two-edged sword. Applying this same rationale to the present case, it is clear from the language of McMillan's will that his idea of what would be necessary for RNB to satisfy any debts of the estate was for RNB to make simple payments out of the general and principal assets of the estate. Thus, we understand the language of McMillan's will to mean that McMillan believed any estate debts could be satisfied through simple payments that did not require the sale of estate property, let alone real property. Indeed, it is clear that McMillan did *not* express a concern that real property would need to be sold to satisfy outstanding debts at his death. Therefore, Appellants are not entitled to the presumption that there existed such debts as would necessitate the sale of real property from McMillan's estate at the time RNB sold the disputed property to Hinn. Appellants are only entitled to a presumption that there were estate debts in such an amount that the debts could be satisfied with simple payments from the general and principal

assets of McMillan's estate.[10]    Appellants bore the burden of proving any further inference in accordance with the general rule in Texas.

Further, even if Appellants were entitled to a presumption that estate debts existed without further explanation or proof, this would not relieve Appellants of the burden of demonstrating that there was insufficient personalty in the estate to satisfy any outstanding estate debts before reaching the realty.  Absent some clear indication to the contrary in the will itself, the personal property must be sold to satisfy debts before an independent executor may begin to sell any of the estate's real property for that purpose.  *See Sinnott*, 322 S.W.2d at 510; *Arnold*, 61 Tex. at 253; *Warren*, 620 S.W.2d at 726.  Even if Appellants were entitled to a presumption that estate debts existed, they have offered no evidence indicating that the worth of available non-realty in the estate had been completely exhausted at the time of the Hinn deed. Therefore, the *Terrell* presumption cannot carry the day for Appellants, and they have failed to produce any evidence, in response to Appellees' motions for summary judgment, that there were existing estate debts necessitating the executor's sale of McMillan's real property.

Accordingly, Appellees were entitled to summary judgment, and the trial court did not err in granting Appellees' motions for summary judgment and concluding that Appellants' countermotion for summary judgment on the same issues was moot.[11]  Appellants insist that their countermotion could not be moot because "it contained additional evidence – the 1963 Ratification."  However, as already discussed at length, that 1963 ratification has no impact on the summary judgment analysis.  As such, we overrule Appellants' first and second issues.

---

[10]The inventory and appraisal of McMillan's estate showed that McMillan's estate had *cash* in the amount of $1,645.03 in 1933, which is the equivalent of $36,706.10 today.  At best, Appellants were entitled to a presumption that there existed some estate debts which could have been satisfied by *payments* from this fund of cash or from income generated by the estate.

[11]"Having no practical significance[.]" *Moot*, BLACK'S LAW DICTIONARY (11th ed. 2019).

*II. Issue Three – The trial court did not err in denying Appellants'
motion to supplement their response to Appellees' motion for summary
judgment with Minnie's 1963 ratification.*

A. *Standard of Review*

"We review a trial court's ruling on a motion for leave to file a late summary-judgment response for an abuse of discretion." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686 (Tex. 2002) (citing *Atkins v. Tinning*, 865 S.W.2d 533, 535 (Tex. App.—Corpus Christi-Edinburg 1993, writ denied)). "A trial court abuses its discretion when it acts without reference to any guiding rules or principles." *Id.* at 687 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). A motion for leave to file a late summary-judgment response should be granted when the party seeking leave demonstrates "(1) good cause, *and* (2) no undue prejudice." *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (emphasis added) (citing *Carpenter*, 98 S.W.3d at 687–88); *see* TEX. R. CIV. P. 166a(c) ("Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."). "Good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler*, 157 S.W.3d at 442 (citing *Carpenter*, 98 S.W.3d at 687–88; *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam)). "Undue prejudice depends on whether . . . filing a late response will delay [the proceedings] or significantly hamper the opposing party's ability to prepare for it." *Id.* at 443 (citing *Carpenter*, 98 S.W.3d at 687; *Stelly*, 927 S.W.2d at 622). Here, even if the trial court abused its discretion by not admitting Appellants' late summary judgment evidence, the trial court's judgment will not be reversed unless the error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1).

B. *Analysis*

Appellants bore an evidentiary burden of *showing* that their untimeliness was neither intentional nor the result of conscious indifference but, rather, the result of an accident or mistake. *Wheeler*, 157 S.W.3d at 442; *Carpenter*, 98 S.W.3d at 688. Appellants also bore the burden of *showing* that if the trial court allowed them to supplement their response to Appellees' motion for summary judgment with Minnie's 1963 Ratification, it would not cause any undue delay or otherwise inhibit Appellees' ability to prepare for their summary judgment hearing. *See Wheeler*, 157 S.W.3d at 443; *Carpenter*, 98 S.W.3d at 688. In this case, Appellants failed to *show* either good cause or a lack of undue prejudice.

In their brief, Appellants argue that they filed their motion "well prior to the trial court ruling on any motion for summary judgment," and they offer the bare assertion that "[c]onsideration of the 1963 Ratification would not have caused undue delay or caused any prejudice." Appellees point out that Appellants had possession of Minnie's 1963 Ratification for a number of years before the hearing on Appellees' motion for summary judgment took place. Indeed, the hearing occurred on May 1, 2019, and the record indicates that the certified copy of Minnie's 1963 Ratification, with which Appellants sought to supplement their response, was issued by the Hale County Clerk's Office on July 6, 2017.

In their motion to supplement, Appellants merely argued that they "exercised due diligence . . . but were made aware of certain Probate documents after the hearing." In other words, Appellants offered no explanation for how being in possession of the evidence without timely submitting it for the hearing was good cause and why the trial court should grant their motion to supplement late evidence post-hearing. *See Carpenter*, 98 S.W.3d at 688 (finding no abuse of discretion because appellant "offered no explanation for its failure to timely respond, nor . . . any supporting affidavits or other evidence"). Appellants had a low bar to clear to

22

demonstrate good cause: namely, that their untimeliness was not intentional or the result of conscious indifference but, rather, an innocent mistake or accident. However, it was still *their bar* to clear. Moreover, absent some showing by Appellants that the untimeliness was a result of a mistake or accident, they failed to demonstrate good cause. This alone is sufficient to affirm the trial court's denial of Appellants' motion to supplement.

Appellants further failed to demonstrate to the trial court a lack of undue prejudice had the trial court admitted their late evidence. Appellants' mere *ipse dixit* that Appellees would not have been prejudiced in any way is insufficient. *See id.* (explaining that "we cannot say that the trial court abused its discretion in denying leave based upon counsel's bare assertion."). While we hold that under these facts the trial court did not abuse its discretion in denying Appellants' motion to supplement their summary judgment response post-hearing, the evidence with which Appellants sought to supplement was irrelevant in any event. Therefore, had the trial court erred in excluding it, such exclusion was harmless. The trial court admitted the 1963 Ratification to supplement Appellant's countermotion for summary judgment, but excluded it as supplemental evidence in Appellants' response to Appellees' motion for summary judgment, the hearing for which had already taken place two days prior. Further, the trial court admitted and considered the 1963 Ratification as to Appellee Higgs's identical no-evidence summary judgment motion. That evidence did not affect the trial court's ruling on the same legal issues. We have reviewed the 1963 Ratification and have given it careful attention. As previously discussed, the 1963 Ratification makes no difference because it is not a ratification of the Hinn deed and because RNB executed the Hinn

23

deed in its capacity as the independent executor of McMillan's estate, not in its capacity as trustee.[12]  Accordingly, we overrule Appellants' third issue.

*III. Issue Four – The trial court did not err in denying Appellants' motion to reconsider its order granting Appellees' motion for summary judgment.*

A. *Standard of Review*

"After a court grants a summary judgment motion, the court generally has no obligation to consider further motions on the issues adjudicated by the summary judgment." *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). However, a trial court "*may* reconsider issues previously adjudicated in a summary judgment until it loses plenary power over those issues." *San Antonio Fed. Credit Union v. Cantu*, No. 04-19-00548-CV, 2021 WL 2132259, at *10 (Tex. App.—San Antonio May 26, 2021, pet. filed) (mem. op.) (emphasis added) (citing *Grace v. Zimmerman*, 853 S.W.2d 92, 98 (Tex. App.— Houston [14th Dist.] 1993, no writ)).

"The standard of review for a motion to reconsider a prior summary judgment is whether the trial court abused its discretion." *Macy*, 294 S.W.3d at 651 (citing *AIC Mgmt. v. Baker*, No. 01-02-01074-CV, 2003 WL 22724629, at *7 (Tex. App.— Houston [1st Dist.] Nov. 20, 2003, pet. denied) (mem. op.)).  A trial court does not abuse its discretion "unless it acts without reference to guiding rules or principles." *Cantu*, 2021 WL 2132259, at *10 (citing *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)).  We will not find that a trial court abused its discretion "if the movant cites no additional evidence beyond the evidence available to him when the first summary judgment was granted." *Brashear v. Dorai*, No. 14-19-00194-CV, 2020 WL 5792304, at *4 (Tex. App.—Houston [14th Dist.] Sept. 29, 2020, no pet.) (mem. op.) (citing *Bridgestone Lakes Cmty. Improvement Ass'n, Inc. v. Bridgestone Lakes*

---

[12]See this court's full analysis in section I, *supra*.

*Dev. Co.*, 489 S.W.3d 118, 125 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)).

"When a motion [to reconsider] is filed after the rendition of summary judgment, 'a trial court has the discretion to consider the grounds in [the] post-judgment motion and supporting proof[,] and reaffirm its summary judgment based on the entire record.'" *PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 729 (Tex. App.—San Antonio 2014, pet. denied) (quoting *Charbonnet v. Shami*, No. 04-12-00711-CV, 2013 WL 2645720, at *5 (Tex. App.—San Antonio June 12, 2013, pet. denied) (mem. op.)). However, the trial court also has the discretion "to simply deny a motion filed after the entry of summary judgment without considering its substance." *Id.* at 730. In that case, "an appellate court need only consider arguments and evidence presented prior to the summary-judgment hearing." *Id.* But if the trial court "affirmatively indicates on the record that it accepted or considered the evidence attached to a motion to reconsider, this court reviews the summary judgment based upon the grounds and proof in both prejudgment and post-judgment filings." *Id.* (quoting Timothy Patton, *Summary Judgments in Texas*, § 7.06[1] (3d ed. 2012)).

B. *Analysis*

Appellants' only argument for this issue is that it was error for the trial court to deny their motion to reconsider because "[t]he 1963 Ratification conclusively shows that [Appellees'] main argument (that Minnie did not consent to the Hinn Deed in writing) was incorrect." We have already rejected this argument in our discussion of Appellants' first issue. Whether Minnie consented to RNB's sale of the disputed property to Hinn has no bearing on whether Appellees were entitled to summary judgment. The trial court did not abuse its discretion by refusing to reconsider its order granting Appellees' motion for summary judgment on that basis.

Moreover, a trial court does not abuse its discretion in denying a motion to reconsider its summary judgment ruling where "the movant cites no additional evidence beyond the evidence *available* to him when the first summary judgment was granted." *Brashear*, 2020 WL 5792304, at *4 (emphasis added). As explained in our discussion of Appellants' third issue, the additional evidence Appellants offered—Minnie's 1963 Ratification—was very much *available* to Appellants for two years before the trial court held its hearing on Appellees' motion for summary judgment. Appellants' fourth issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


February 17, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.